MONROE, C. J.
Plaintiff has appealed from a judgment sustaining an exception of no cause of action and dismissing its suit.
The petition alleges, in substance, that Crayton Williams was employed by plaintiff as a fireman, and on February 5, 1915, in the discharge of his duties, attended a fire, at which he lost his life by coming in contact with a heavily charged electric wire owned or controlled by defendant, and, through defendant’s gross negligence, allowed to remain exposed and uninsulated; that he left a widow and a minor child who had been dependent on him for support, to whom, by reason of the facts stated, the defendant herein became indebted in the sum of $15,-000, and to whom petitioner owed compensation as provided by Act No. 20 of 1914, the amount of which, having been fixed by judgment, has been, and is still, regularly paid; that, according to the provisions of said act and by reason of said judgment, petitioner has been legally subrogated to the right of said widow individually and as tutrix with respect to the debt due by defendant, and has moreover been so subrogated by virtue of a notarial contract of date March 16, 1915. Wherefore it prays that defendant be cited and for judgment in the sum of $15,000.
Act No. 20 of 1914 is entitled:
“An act prescribing the liability of an employer to make compensation for injuries received by an employé in performing services arising out of and incidental to his employment in the course of his employer’s trade, business or occupation in certain trades, business(es) and occupations, abolishing in certain cases the defenses of assumption of risk, contributory negligence and negligence of a fellow servant in actions for personal injury and death, establishing a schedule of compensation, regulating procedure for the determination of liability and compensation thereunder and providing for methods for payments of compensation thereunder.”
The text of the act comports with the title, and, taking the two together, they disclose the.object to be to provide that in certain classes of employments and industries and under certain conditions the employer shall make compensation when the employs is injured; and, as it contemplates the making of the compensation as well when the employs dies of his injury as when he survives, it follows that the conditions and regulations with respect thereto were in all probability intended to be applied in the one case to the injured employs, and -in the other to those who survive him and succeed to his rights. It will be observed that the words “injury and death” are associated in the title of .the act, and elaborate provision is *1081 made in the text for the payment of the compensation therein contemplated to the dependents of the injured employé after his death; the remedies afforded to the one being, as a rule, the same as those afforded to the other. The parties to whom the act applies are variously referred to therein as “the employer,” “the employé,” “the interested parties,” “the person to whom compensation is due,” “the dependents,” “the representatives,” etc. Most frequently, no doubt, where employer and employé and the dependents of the latter are intended, it is so expressed, but there are many instances in which the intention to include the dependents is obvious enough, and yet they are not mentioned.
Thus section 17 provides that “the interested parties” (meaning the employer, the employé, and the dependents of the latter) shall have the right to settle all matters of compensation between themselves, but that their agreements shall be in writing and approved by the judge. It then declares that “the agreements between employer and employé shall be presented to the court upon joint petition of employer and employé,” thus entirely ignoring the dependents of the employé. Section 18 provides that, in ease of failure of employer and employé or dependents of employé to agree upon a claim for compensation, either party may present a complaint to the judge, but section 19 declares that “either employer or employé shall have the right to appeal to the proper appellate tribunal,” and plaintiff’s counsel call attention to eight other instances of a similar character. The provision of the statute upon which this controversy appears to hinge is the following:
“Sec. 7. * * * That, when an injuiy for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employé may, at his option, either claim compensation under this act or obtain damages from, or proceed at law against, such other person to recover damages, and, if compensation is claimed and awarded under this act, any employer, having paid the compensation or having become liable therefor, shall be subrogated to the rights of the injured employé to recover against that person, and may compromise the claim therefor in his discretion: Provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employé, less the employer’s legitimate and reasonable expenses and costs of the action, which payment shall be credited upon the balance of compensation, if any, that may become due thereafter.”
The contention of the defendant is that, whilst the section thus quoted provides that the employer who pays compensation to an injured employé shall be subrogated to the rights of such employé with respect to his claim against the third person who might be liable in damages for his injury, it does not so provide with regard to the claim of the employé’s dependents, which is quite true. But neither does the quoted section provide that the dependents shall have the option, in case the injuries of the employé result in his déath, of claiming compensation from the employer, under the act, or claiming damages from the “other person” through whose fault the injury to the employé may have been inflicted, and yet the act declares that for injury causing death within a year payment of compensation shall be made to those wholly dependent iand to those partially dependent upon certain bases; that the wife and certain others shall be presumed to have been wholly dependent, that in other cases the matter shall be determined by the facts, and that the dependents shall have the right to present their claims to the judge, and, in general, confers upon the dependents about the same rights, to be exercised after the, death, that the employé may exercise before his death, and C. O. 2315, confers on the wife and children and brothers and sisters of the decedent the right of action in damages that he may have possessed at the time of his death, and also the right to sue for such damages as they may have sustain *1083 ed by reason of his death. Section 7 appears, therefore, to have been equally unnecessary to either the employé or his dependents, so far as the option is concerned, and is important only with reference to the subrogation.
Upon that point it may reasonably be inferred that, in enacting a statute under which an employer may be held liable to the employé for the fault of a third person over whom he (the employer) has no control, it was thought advisable to make some provision whereby that burden might be shifted to the shoulders of the person really at fault, though it was not thought advisable either to relieve the employer of the obligation to make compensation to the employé or to give the latter an action under the statute in addition to that given by the Code. On the other hand, it was clearly the proper thing to provide against the employer’s making a profit out of the transaction by collecting more than he was required to pay out. The idea that was adopted, therefore, was to allow the employer to recoup himself and to require him to pay over to the employé whatever amount he might be able to collect from the party at fault in excess of that required to make him whole; and, as his liability to the dependents of the injured employé who dies is the same as his liability to the injured employé who survives, there appears to us to be no conceivable reason why he should not be allowed the same subrogation in the one case as in the other. Section 7, however, is an exceedingly important one, and we feel bound to assume that it was fully considered, and that the lawmakers found reason, though it is not apparent to us at this time, for according to the employer the right of subrogation to the injured employe’s claim and for denying that right as to the claim of his dependents; and as the fact is that the section does not provide for the subrogation of the employer to the rights of the dependents, we do not feel authorized to substitute our view of what may have been intended for what was actually done or left undone. The conclusion thus reached seems all the more inevitable in this case when we consider section 34 of the statute in question, which reads:
“That the rights and remedies herein granted to an employé on account of a personal injury for which he is entitled to compensation under this act shall be exclusive of all other rights and remedies of such employé, his personal representatives, dependents, relations, or otherwise, on account of such injury.”
One of the rights -granted to the employé is that of subrogating his employer to his right of action against the person through whose fault he was injured, and whilst the literal interpretation of section 34 must, no doubt, in some other respects yield when construed with other provisions of the statute, there is nothing to prevent its being interpreted as written so far as the right thus mentioned is concerned.
[1] Occasions may now and then arise when, from some necessity to make particular statutes intelligible and operative, courts will correct or ignore obvious inadvertences therein, but it should never be forgotten that the power to make the laws is not vested in the judiciary, that, when the department in which that power is vested has expressed itself in unambiguous language, the presumption arises that it intended that which the language imports, and that in this state it has prescribed for the judiciary and the public at large a rule of interpretation which is expressed in language of that character, to wit:
“When a law is clear and free from all ambiguity, the letter of it is not to be disregarded under pretext of pursuing the spirit.” C. C. 13. Walker v. S. & P. Railroad Co., 110 La. 718, 34 South. 749.
[2] We are of opinion, however, that plaintiff is subrogated to the rights of the widow as set forth in the notarial contract, made *1085 part of the petition, though we express no opinion in regard to the rights of the minors of whom she is natural tutrix. Counsel for defendant argue that no such assignment or subrogation can be sustained, for the reason that (quoting from the syllabus of their first brief):
“Both at the civil law and at the common law, the assignment, transfer, sale, subrogation, or any other form of alienation of an action for personal injuries is reprobated as being against public policy and good morals.”
The learned counsel seem to forget that the public policy of a state is determined by its laws, and to ignore the fact that the statute here in question authorizes an injured employé to subrogate his employer to his right of action for damages against the person through whose fault he was injured.
And we may also call their attention to Act No. 124 of 1906, amending and re-enacting R. S. 2897, and providing:
“That, by written contract, signed by the client, attorneys at law may acquire as their fee in such matter an interest in the subject-matter of the suit, proposed suit or claim, in the prosecution * * * of which they are employed, whether suit or claim be for money or for property, real, personal or of any description whatever.”
If, then, according to the authoritatively declared public policy of the state, an injured employé may assign his claim for the damages resulting from suc-h injury to his employer, and his widow may assign her claim for such damages, and for the injuries inflicted upon her in the event her husband dies of such injuries (as provided by O. O. 2315), or such proportion thereof as may be agreed on, to the attorney whom she employs for its collection, how can it be said that she offends against such public policy by making a similar assignment to some one else, under conditions which may, perhaps, be more favorable to her?
[3] As to the moral aspect of the case, this court is not charged with the function of determining either the morality or the expediency of legislation, but in answer to the suggestion of counsel will venture to say that it discovers no immorality in a contract the apparent purpose of which is to relieve a person who has not incurred a debt from the obligation of paying it and to shift that burden to the shoulders of the real debtor (not that we are saying that the counsel’s client is the real debtor in this casé, but, as the suit has been dismissed on an exception of no cause of action, we must proceed upon that theory). Our conclusion then is that there was error in the judgment appealed from, and it is therefore annulled, and the case is remanded to be proceeded with according to law and the view expressed in this opinion, the costs of the appeal to be paid by defendant, and those of the trial court to await the final judgment.