### DEVINE v. NATIONAL LIFE & ACCIDENT INS. CO. OF NASHVILLE, TENN.
#### No. 16322.

Court of Appeal of Louisiana. Orleans.
March 9, 1936.

Rehearing Denied March 23, 1936.

Porteous, Johnson & Humphrey and W. A. Porteous, Jr., all of New Orleans, for appellant.

J. I. McCain, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by George Devine, the beneficiary of a life insurance policy issued to Lottie Harris, deceased, by the National Life & Accident Insurance Company of Nashville, Tenn., in which the full amount of the death benefit, $207, is claimed. The policy was issued October 3, 1927, and lapsed for nonpayment of premiums on December 19, 1932. Lottie Harris died August 5, 1935. It is admitted that at the time the policy lapsed it had a net cash or reserve value of $10.82, which plaintiff contends must, under the provisions of Act No. 193 of 1906, be applied to the purchase of extended insurance for the full amount for a limited period, whereas the defendant contends that Act No. 57 of 1932 is applicable, and that, according to its terms, the cash or reserve value may be applied to the purchase or paid-up insurance for life, which would amount to $24.

The sole issue is whether Act No. 193 of 1906, or Act No. 57 of 1932, applies. It is conceded that if the earlier act controls, the cash reserve is more than sufficient to carry the policy beyond the date of the death of the insured, and that if the later act applies, $24 is the proper amount of paid-up insurance. The policy having been issued in 1927, it is conceded that at the time of its issuance it was controlled by the act of 1906. It is said, however,

that since the policy did not lapse until December, 1932, and the insured did not die until August, 1935, the later statute is applicable. Act No. 193 of 1906 provides, in section 2, that "no policy of life or endowment insurance (other than a term policy for twenty years or less) issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse or become forfeited by the non-payment of any premium. * * * The reserve on such policy computed according to the standard adopted by said company, * * * shall upon demand with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided that if no other option expressed in the policy be availed of by the owner thereof, the same without any further act on the part of the owner of the policy, shall be applied to continue the insurance in force at its full amount including any outstanding dividend additions * * * so long as such surrender value will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture * * * and provided further that any attempted waiver of the provisions of this paragraph in any application, policy or otherwise, shall be void."

Act No. 57 of 1932, which was an act "to amend and re-enact section 2 of Act 193 of 1906," declares "That no policy of life or endowment insurance (other than a term policy for twenty years or less) issued by any legal reserve life insurance company on or after January first, nineteen hundred and seven, after being in force three full years shall by its terms lapse or become forfeited by the non-payment of any premium. * * * The reserve on such policy computed according to the standard adopted by said company, * * * shall upon demand with surrender of the policy, be applied as a surrender value as agreed upon in the policy; provided that, if no other option expressed in the policy be availed of by the owner thereof, the same, without any further act on the part of the owner of the policy, shall be applied *either to purchase upon the same life, at the attained age, paid-up insurance, payable at the same time, and under the same conditions, except as to the payment of premiums, as the original policy, or* to continue the insurance in

force at its full amount, including any outstanding dividend additions, * * * so long as such surrender value will purchase non-participating temporary insurance at net single premium rates by the standard adopted by the company, at the age of the insured at the time of lapse or forfeiture; * * * and provided, further, that any attempted waiver of the provisions of this paragraph in any application, policy or otherwise, shall be void." (Italics ours)

Under the prior act the insurance company had no option, and the reserve had to be applied to the purchase of extended insurance at the full face value, whereas, under the subsequent act, the insurance company might apply the reserve to either paid-up or extended insurance. It will be observed that there is repeated in the amendatory act the language of the original act, which provided "that no policy * * * issued * * * on or after January first, Nineteen Hundred and seven, after being in force three full years shall by its terms lapse," etc. Counsel for plaintiff contends that the reference to January 1, 1907, as the effective date, was an inadvertence superinduced perhaps by reason of article 3, § 17 of the Constitution of Louisiana, which provides: "No law shall be revived or amended by reference to its title, but in such cases the act revived, or section as amended, shall be reenacted and published at length."

On the other hand, opposing counsel contends that this phraseology was purposely included in the amendatory act and evidences an intention to make the new act retroactive and argues that there is no valid objection upon constitutional grounds as impairing the obligation of a contract because the subject-matter is one involving the public policy of the state. On this point plaintiff counters with the statement that only public, social, or emergency legislation, or the exercise of the police power of a state, can properly affect the obligation of contracts lawfully entered into.

█ Is the act of 1932 intentionally retroactive? The rule is that a statute should have only prospective effect, unless its language compels a different conclusion.

"A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts." Article 8, Rev.Civ.Code.

"Acquired rights and existing compacts cannot be affected by subsequent legislation." State v. Bermudez, 12 La. 352.

"A law will not be given a retroactive operation, unless the intention that it should so operate is so clearly expressed that no other construction is possible. * * * State ex rel. Knollman v. King, 109 La. 799, 33 So. 776." 4 La.Digest, Verbo "Laws," § 103.

 In our opinion the presence of the words in the amendatory act of 1932 relative to its effective date is very clearly an error. It was probably due to the fact that the former act of 1906, with exception of the portion to be amended, was copied in extenso by the framers of the new act. The act of 1906 provided that where the insured failed to make a choice as between extended insurance and a paid-up policy, the accumulated reserve on a lapsed policy must be applied to the purchase of extended life insurance, and the sole purpose of the amendatory statute was to permit the insurer to apply the reserve to either the one or the other. To say that the act is purposely retroactive would result in a manifest absurdity. In the first place, if the Legislature had intended to affect policies issued prior to its passage, it could very easily have said so. Moreover, the statute is couched in the future tense. Act No. 193 of 1906 had been in existence for twenty-six years when the amendatory act of 1932 was passed, and all policies which had been issued in conformity with the first act had been subject to its provisions during that period. Many of them had doubtless been settled long before the enactment of the later statute. It is inconceivable that the Legislature intended, by the adoption of the act of 1932, to declare that policies which had lapsed, or which perhaps had been settled for on the basis of the former act during the period of twenty-six years prior thereto, should be governed by its provisions. Statutes must be given a reasonable interpretation. While it is true that courts have no concern with the wisdom or policy of a statute, their function being confined to its interpretation, it is also true that "occasions may now and then arise when, from the necessity to make particular statutes intelligible and operative, courts will correct or ignore obvious inadvertences therein." Shreveport v. Southwestern Gas & Elec. Co., 140 La. 1078, 74 So. 559.

In Corpus Juris, vol. 59, Verbo "Statutes," p. 992, we find the following: "While, as a general rule, every word in a statute is to be given force and effect, words inadvertently used, words to which no meaning at all can be attached, or words having no meaning in harmony with the legislative intent as collected from the entire act, will be treated as surplusage, and will be wholly disregarded in the construction of the act in order to effectuate the legislative intent; * * *."

Reading the two statutes together as laws in pari materiæ, it is clear that the only purpose of the later statute and its only intention was to change the provision in the earlier act concerning the application of accumulated reserves on lapsed policies in which no option had been exercised by the insured.

In Watson v. Metropolitan Ins. Co., 183 La. 25, 162 So. 790, decided on Feb. 4, 1935, Act No. 193 of 1906 was interpreted and applied to a policy issued April 28, 1924, which lapsed on November 14, 1932. The act of 1932 is not discussed in the Watson Case, but, apparently considered, for in the opinion of the Court of Appeal in that case (156 So. 29, 33), from which court the case was ordered up for review by the Supreme Court, we find the following:

"Nor are we in any way shaken in our view by a consideration of Act No. 57 of 1932, which is amendatory of Act No. 193 of 1906.

"The later act, which, it is conceded, has no direct bearing here."

But, if the Watson Case may not be considered as authority for the proposition presently under discussion, it is certainly not authority to the contrary. Act No. 57 of 1932 went into effect August 5, 1932, or twenty days after the adjournment of the Legislature of that year. Article 3, § 27 of the Constitution of 1921. Therefore, when the policy before us lapsed on December 19, 1932, it did not and could not affect the policy which was issued October 3, 1927, which is controlled by Act No. 193 of 1906. This was at least inferentially held in the Watson Case, supra, and is otherwise supported by authority. For instance, it was said in Gillespie et al. v. Cammack et al., 3 La.Ann. 248, 249, at page 251: "The right therefore to ten per cent. damages, if the bill should be returned protested, being conferred by the statute, must be con-

sidered as part of and embodied in the contract, and the subsequent statute must not be construed to operate retrospectively so as to take away a vested right."

In Town v. Morgan's Syndics, 2 La. 112, 20 Am.Dec. 299, it was held: "In conditional obligations, the law at the time the obligation was contracted, not that in force when the condition takes place, must govern the rights of the parties."

And we find the following in Central Glass Co. v. Niagara Fire Ins. Co., 131 La. 513, at page 517, 59 So. 972, 974: "To allow the Legislature to change the contract in such features as these, existing solely by the will of the parties, and operating without need of any recourse to the judicial tribunals, would be to allow the Legislature to change or impair the contract of the parties. Even when such conditions and stipulations have come into the contract, not by express agreement, but merely as an effect of the existing law being read into the contract, they are beyond legislative control if they have become integral parts of the contract."

■ We conclude, therefore, that the act of 1932 can be given no retroactive effect.

The alleged unconstitutionality of the act of 1932 as being repugnant to the constitutional provision concerning the impairment of the obligations of contracts need not be considered for the reason that we have held that the act was not intended to be and is not retroactive.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

JANVIER, Judge (concurring).

A concurring opinion is usually looked upon as evidencing doubt, on the part of the author, of the soundness of the reasoning set forth in the controlling opinion. Such is not true in this instance. I feel that what my associates have said is logical and sound, and yet I find, among the many arguments and contentions of counsel, reasons on which the decree might have been based, which reasons appeal to me as conclusive of the issues involved, and I cannot resist the impulse to set them forth, particularly as the only reason given in the controlling opinion is one which results from the conclusion that the framers of a written statute did not intend to say what they plainly did say.

I do not feel that the framers of the act of 1932 intended that it should have retroactive effect. I believe that they did not mean, in 1932, to say that, into all policies issued on or after January 1, 1907, certain conditions should be written. Nevertheless they did say just that, and an issue is always extremely controversial which depends upon the conclusion that that which is expressly stated was not intended.

That the statute of 1932, if given retroactive effect, is violative of the provisions of the State and of the Federal Constitution, appears to me plain, and, for my part, I prefer to eliminate that statute from consideration by holding that, if it is interpreted as having retroactive effect, it is unconstitutional rather than by the method adopted by my associates.

If interpreted as having retroactive effect, it is unconstitutional because it would then be permitted to impair the obligation of the contract of insurance entered into in 1927, some five years prior to its enactment.

A state statute may not validly impair the obligation of a private contract. If there is an exception in the case of a statute prompted by grave public or social emergency, that exception results only from the inherent police power of the state. The statute involved here is not so prompted. At the time of the issuance of the policy sued on, Act No. 193 of 1906 was in effect. That act should be read into that policy, and, as a result of the effect of that act on the policy, the insured should be given the right to extended insurance in case of failure to pay premiums, for the act provides that if the insured, on failure to pay premiums, exercised no contrary option, he was to be accorded extended insurance automatically. See Watson v. Metropolitan Ins. Co., 183 La. 25, 162 So. 790. Therefore, since the law itself read these obligations into the policy contract, no state law could subsequently impair those obligations, for section 10, art. 1, of the United States Constitution provides that "No state shall * * * pass any * * * law impairing the obligation of contracts."

Likewise, the State Constitution, in section 15, art. 4, contains a similar inhibition: "No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public util-

ity, and for just and adequate compensation previously paid."

The act of 1932, if it is effective here, would give one of the parties to the contract the right to apply the reserve to the purchase of paid-up insurance; in other words, to change the obligation fixed, as a result of the act of 1906, at $207 to an obligation for $24, which would be the amount of recovery if the act of 1932 is to apply.

It is true that the provision for automatic extended insurance was not expressly contained in the policy as it was originally written, but, as a result of the interpretation placed by the Supreme Court on the act of 1906 in the decision of Watson v. Metropolitan Insurance Co., supra, it was written into that policy as the result of law, and there can be no doubt that the provisions of a contract are protected by constitutional inhibitions, whether those provisions be contained in the contract as written, or be written into the contract as the result of law.

It is equally certain that, where a contract is entered into in view of the prevailing law on the subject, even though the rights under the contract may not come into existence until after the law has been changed, nevertheless that contract should be interpreted in the light of the law as it existed at the time the contract was written and not in the light of the law as it may have been subsequently repealed or amended. The right to extended insurance here did not, under the terms of the contract, come into existence until there should be a lapse, but once the right to extended insurance upon a lapse was written into the policy, it remained a part of the policy and should not be written out by some later law.

In Gillespie v. Cammack, 3 La.Ann. 248, 249, is found an interesting case involving a statutory change in the amount of protest fees allowed to the holder of a bill of exchange. When the bill of exchange was issued, the law provided for 10 per cent. of the amount as a protest fee. Before the right to the fee came into existence the law was changed, and the amount of protest fees was limited to 5 per cent. When it became necessary to sue on the bill, the question of the proper amount of protest fee was presented. In the syllabus of that case appears the following: "Where, at the date of a bill, a statute was in force allowing damages at ten per cent. in case

of protest, the right to damages at that rate must be considered as part of the contract. A subsequent statute reducing the rate, though in force at the time of suit, cannot affect the right of the creditor to damages at the rate fixed by the statute in force at the date of the contract."

In the body of the opinion the court said: "The right therefore to ten per cent. damages, if the bill should be returned protested, being conferred by the statute, must be considered as part of and embodied in the contract, and the subsequent statute must not be construed to operate retrospectively so as to take away a vested right."

In Town v. Morgan's Syndics, 2 La. 112, 20 Am.Dec. 299, is found a case involving a note. At the time the note was issued the law provided that the holder of such a note should be a privileged creditor. Before the note became due, by statutory change, the classification of the holder of such a note was made that of an ordinary creditor. When the note matured and was not paid, the question of the classification was presented and the court held that "In conditional obligations, the law at the time the obligation was contracted, not that in force when the condition takes place, must govern the rights of the parties." Syllabus.

In Bank of Minden v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857, the Supreme Court of the United States considered a most interesting case involving the effect of Act No. 189 of 1914 of Louisiana. Certain notes of Clement, the defendant, were held by plaintiff bank. Clement procured the issuance of policies of insurance on his life and had them made payable to his estate. At the time the notes were issued to the bank the law of this state did not prohibit the seizure of the proceeds of such life insurance policies by the creditors of the estate. Before the notes became due the Legislature of Louisiana passed Act No. 189 of 1914, which exempted such policies from seizure for debt. Later the bank seized the proceeds of the policies and the administrator of the estate of defendant, Clement, contended that by the act of 1914 the proceeds of those policies were exempted from seizure for debt. The court said:

"Section 10, article 1, of the Constitution —'No state shall * * * pass any * * *

law impairing the obligation of contracts'—has been much considered by this court and often applied to preserve the integrity of contractual obligations. * * *

"In Sturges v. Crowninshield, 4 Wheat. 122, 197, 198, 4 L.Ed. 529, opinion by Mr. Chief Justice Marshall, it was said: 'What is the obligation of a contract and what will impair it? It would seem difficult to substitute words which are more intelligible, or less liable to misconstruction, than those which are to be explained. A contract is an agreement in which a party undertakes to do, or not to do, a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract. * * * Any law which releases a part of this obligation must, in the literal sense of the word, impair it. * * *' And in Planters' Bank v. Sharp, 6 How. 301, 327, 12 L.Ed. 447, opinion by Mr. Justice Woodbury: 'One of the tests that a contract has been impaired is that its value has by legislation been diminished. It is not, by the Constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force.' "

The policy in the instant case, like the policies in the Clement Case, were affected on issuance by the law in existence at that time.

It is contended that the act of 1932 resulted from public necessity and was an expression of public policy; that it deals with a matter which is affected with a public interest and that, therefore, it may validly contain provisions which would otherwise improperly impair the obligation of contracts.

We agree with counsel for plaintiff that the exception to the fundamental rule is not a question of public policy, but is a question of the valid exercise of the police power of the state. Such a law, to be valid and to be given retroactive effect, must result from some great public need or requirement. In legislation dealing with the safety, the health, and the morals of the general public, the inhibition against impairing the obligation of contracts has not been applied. For instance, in Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S.Ct. 231, 242, 78 L.Ed. 413, 88 A.L.R. 1481, the United States Supreme Court considered the much-discussed Minnesota Moratorium Law, and in Metropolitan Life Insurance Company v. Morris, 181 La. 277, 292, 159 So. 388, our Supreme Court considered a somewhat similar Louisiana statute. In the Blaisdell Case the court said:

"An emergency existed in Minnesota which furnished a proper occasion for the exercise of the reserved power of the state to protect the vital interests of the community. * * *

"The legislation was addressed to a legitimate end; that is, the legislation was not for the mere advantage of particular individuals but for the protection of a basic interest of society."

In the syllabus of the Morris Case appears the following: "Mortgage Moratorium Law, providing for postponement of foreclosure sale beyond due date of mortgage debt, held not unreasonable exercise of state's police power in view of economic emergency, and therefore not invalid as impairing obligation of contract."

Defendant would bring the legislation now under discussion, to wit, the act of 1932, into the category of that considered in the cases above referred to, contending that legislation affecting insurance companies is affected with a public interest; that it is quasi public in nature and that, therefore, such legislation may be constitutionally retroactive, and in support of this view cites the decision of the Supreme Court of Louisiana in Treigle v. Acme Homestead Association, 181 La. 941, 942, 160 So. 637, 98 A.L.R. 69. But that case was reversed by the Supreme Court of the United States in a decision rendered on February 3, 1936 (56 S.Ct. 408, 411, 80 L.Ed. ——), the court holding very clearly that such institutions as homestead associations, banks, utility companies, etc., though performing public service, and, therefore, quasi public by nature, cannot be affected by legislation which impairs the obligation of contracts which they may enter into unless the legislation is such as is passed in the exercise of the police power of the state. It must, as counsel for plaintiff say, be legislation passed as "the result of some universal public requirement." In the Treigle Case the Supreme Court said: "But laws touching building and loan associations, like those affecting banks or utility companies, must be confined to purposes reasonably connected with the public interest as distin-

guished from purely private rights. The Legislature has no greater power to interfere with the private contracts of such corporations, or the vested rights of their stockholders as such, under the pretext of public necessity, than it would have to attempt the same ends in the case of a private corporation. Though the obligations of contracts must yield to a proper exercise of the police power, and vested rights cannot inhibit the proper exertion of the power, it must be exercised for an end which is in fact public and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive."

We see in the statute of 1932 no attempt to produce a result obviously necessary for the public good or obviously required for public safety or public morals.

Counsel for defendant cites many cases in which acts of Congress have been held to affect contracts previously entered into. But there is no prohibition against such congressional action. Both the federal and the state constitutional restrictions are directed solely at state legislation. Counsel cites other cases, such as Gager v. Teche Transfer Co. (La.App.) 143 So. 62, and Rossville Commercial Alcohol Corp. v. Dennis Sheen Transfer Co., 18 La.App. 725, 138 So. 183, but those and similar cases involved the retroactive effect to be given to statutes affecting remedies or forms of procedure, and, of course, it cannot be denied that such statutes may be given retroactive effect. No impairment of contract results.

I am, therefore, of the opinion that the statute of 1932, if considered as having retroactive effect, is unconstitutional, and that a decree in plaintiff's favor could better have been based on the unconstitutionality of that statute. I, however, concur in the reasons and decree issued by my associates.