332 So.2d 534 (1976)
Robert C. JORDAN, Plaintiff and Appellant,
v.
LeBLANC AND BROUSSARD FORD, INC., et al., Defendants and Appellees.
No. 5218.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1976.
*536 Henry A. Bernard, Jr., New Iberia, for plaintiff and appellant.
Landry, Watkins, Cousin & Bonin by Alfred S. Landry, New Iberia, Davidson, Meaux, Onebane & Donohoe by Timothy J. McNamara, Lafayette, Roy & Forrest by L. Albert Forrest, New Iberia, for defendants and appellees.
Before HOOD, CULPEPPER, DOMENGEAUX, WATSON and PAVY, JJ.
PAVY, Judge.
Plaintiff, Robert C. Jordan purchased a new Ford truck from defendant, LeBlanc and Broussard Ford, Inc. of New Iberia. After experiencing difficulty with the vehicle, plaintiff tendered it to the vendor requesting rescission of the sale. Defendant-vendor refused to rescind the sale, and plaintiff brought this redhibitory action against LeBlanc and Broussard Ford, Inc., and the manufacturer, Ford Motor Company, seeking rescission of the sale, expenses, and damages. Defendant, Ford Motor Company, filed an answer and made a general appearance; defendant LeBlanc and Broussard Ford, Inc. filed a dilatory exception of prematurity and in the alternative a peremptory exception of no cause of action, both exceptions based upon plaintiff's failure to comply with Civil Code Article 2531, as amended. After a trial on the exceptions, the trial judge dismissed plaintiff's suit with prejudice as to both defendants, finding merit in the exceptions raised.
In Prince v. Paretti Pontiac Co., 281 So.2d 112 (La.1973) it was held that a seller was not entitled to an opportunity to repair a defect in a thing sold as a condition precedent to a rescission suit. At the time of that decision, Civil Code Article 2531 read as follows:
"The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser *537 has drawn from it, be sufficient to satisfy those expenses."
By Act 673 of 1974 that article was amended to read as follows:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
Civil Code Article 2521 reads:
"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
It is apparent that the reference to amended Article 2521 does not connect logically due to the absence in the latter article of any standards or conditions for the right to repair. A companion bill to amend the latter article failed to pass in the 1974 legislative session. See 49 Tulane Law Review 487.
We do not think the absence in Article 2521 of any conditions or guides for the repair right should render nugatory the 1974 amendment to Article 2531. Reason and basic statutory construction require that some sensible effect be given to the language ". . . is only bound to repair, remedy or correct the vice . . ." Instead of compounding the legislative mistake by disregarding that language, we feel obliged to salvage what we can from the legislative will.
An absurd result is not to be imputed to the legislature in the enactment of a law. State ex rel. Graham v. Republican Central Committee of Louisiana, 193 La. 863, 192 So. 374 (1940). Constitutional and legislative enactments are presumed to be valid and to have meaning. Roberts v. City of Baton Rouge, 236 La. 521, 108 So. 2d 111 (1959). A court is constrained to construe an expression in a statute so as to give it effect rather than to render it meaningless. State v. Mestayer, 144 La. 601, 80 So. 891 (1919). In construing different provisions of a statute, the court, as far as practical, should reconcile them, and, if possible, give a sensible and intelligent effect to each. Woodruff v. Producers' Oil Company, 142 La. 368, 76 So. 803 (1917).
Words may be rejected to effectuate legislative intent but not to change it. State v. Dudley, 159 La. 872, 106 So. 364 (1925). Where words and clauses which have inadvertently crept into statutes are clearly repugnant to legislative intent, such words and clauses may be disregarded. State v. Caldwell, 170 La. 851, 129 So. 368 (1930).
In Devine v. National Life & Accident Insurance Co., 166 So. 522 (La.App.Orl. 1936) it was said:
"Statutes must be given a reasonable interpretation. While it is true that courts have no concern with the wisdom or policy of a statute, their function being confined to its interpretation, it is also true that `occasions may now and then arise when, from the necessity to make particular statutes intelligible and operative, courts will correct or ignore obvious inadvertences therein'. Shreveport v. Southwestern Gas & Elec. Co., 140 La. 1078, 74 So. 559."
*538 In Vol. 82 C.J.S. Verbo Statutes § 343, p. 687, dealing with surplusage and unnecessary matter, the rule is stated:
"Words having no meaning or in harmony with the legislative intent as collected from the entire act may be treated as surplusage, and may be wholly disregarded in the construction of the act in order to effectuate the legislative intent; but words in a statute should not be construed as surplusage, if a reasonable construction will give them some force and meaning is possible."
We find it impossible to give meaning in the amendatory language to the reference to Article 2521 and will treat it as surplusage. It is apparent that the legislature attempted to give the right to repair and to specify the terms and conditions of such right. It failed in the latter, but we do not think there is such an interdependence or necessary connection between these two aims that they must both fall or stand together. Accordingly, we hold that the 1974 amendment to Article 2531 of the Civil Code effectively gives a good faith seller the right to repair or correct a defect before suffering rescission of a sale. Until the legislature provides specific rules concerning the terms and conditions of the right to repair, there is no alternative in the judiciary but to decide each case on its peculiar circumstances with due regard being given to the competing interests of the consuming public and the retailers and manufacturers.
The petition herein expressly alleges that the defendants knew of the defects. Civil Code Article 2545 states:
"Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
It is noted that this article is found in Paragraph 3 of Section 3 (Of The Vices Of The Thing Sold) of Chapter 6 of the Civil Code title dealing with sales. Paragraphs 1 and 2 of that Section 3 deal respectively with redhibitory vices and price reduction vices. Thus, the plan is to deal with the two types of vices in relation to their degree of inconvenience or uselessness and separately (by Paragraph 3) to deal with those vices of which the seller knew, regardless of the degree of inconvenience or uselessness. All these provisions are in pari materiae and must be construed in relation to each other. We cannot conclude that this codal scheme creates such a separate cause of action for rescission under Article 2545, that an allegation of knowledge of the defect precludes the seller from showing that he did not know of the vice and from demanding the rights accorded to a seller in good faith by LSA-C.C. art. 2531, as amended. Thus the right to an opportunity to repair in the amendment to Article 2531 is available to a defendant in a redhibitory action if he shows that he did not know of the defect, whether there is an allegation of knowledge of the defect or not.
By the language of that amendment, the right to an opportunity to repair is a condition precedent to rescission if the seller is in good faith. This right should be available in limine under the exception of prematurity. To hold that the right to repair can only arise on the merits or as some sort of affirmative defense would allow a petitioner to force a defendant to full trial on the question of the existence and nature of the defect which may or may not exist and which may or may not be easily correctable. We think such an untoward result is the real reason for an exception of prematurity. If the right to repair is deferred to the merits and then accorded, there will always be the possibility of another trial to again determine the existence and nature of the defect after repair. In most cases, the resolution of the question in limine will be more advantageous to all parties regardless of the outcome.
*539 Code of Civil Procedure Article 929 states that the dilatory exception ". . . shall be tried and decided in advance of the trial of the case." Article 930 provides that as to an exception of prematurity (among others) evidence may be introduced ". . . to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition."
Perhaps in some situations, for administrative reasons, the trial judge should refer the exception of prematurity to the merits or overrule it with reservation to allow correction of the defect during a stay or trial if the evidence warrants such action. The trial judge decided to dispose of the exception of prematurity in limine, and we are not inclined to overturn his procedural action in that regard.
The evidence shows that plaintiff wanted a special type truck which defendant-retailer did not have in stock. Arrangements were made to obtain one through a dealer in Monroe. The defendant-retailer was to purchase from the dealer in Monroe and sell to plaintiff. A firm deal was made between the parties and a deposit given. Plaintiff and one of defendant-retailer's employees went to Monroe, and plaintiff drove the truck back to New Iberia. Upon return, he told the shop foreman that there was a noise in the transmission. The defendant-retailer had work done on the transmission and serviced the car in the usual manner for delivery. Plaintiff accepted the truck and one month later returned it. His attorney wrote a letter expressing the tender and demanding return of the purchase price. This letter complained of further difficulties with the transmission and the throwing of a rod. Plaintiff's petition alleged that the truck had a defective transmission and a defect in the engine.
Technically, the sale had been completed before the trip to Monroe, or at least when the truck was designated for this transaction. It is obvious that defendant-retailer knew nothing of any alleged defects in the engine prior to the sale regardless of when we would consider the sale to have been completed. With regard to the alleged transmission defect which showed up on the trip from Monroe to New Iberia, we think the defendant-retailer should be given an opportunity to further repair it even if we were to hold that the sale was not completed until the servicing and delivery. The evidence indicates that to the defendant-retailer's knowledge the defect was corrected during servicing and plaintiff accepted delivery of the truck. There was no evidence that the defendant knew the transmission had not been properly repaired. It was one month later before plaintiff returned the vehicle complaining of further transmission problems. Accordingly, under the specific circumstances of this case, we think the defendant retailer should be given an opportunity to further repair the transmission defect even if the defect alleged in the petition is the same as that dealt with in servicing.
The district court's judgment sustained the exceptions of prematurity and of no cause of action filed by LeBlanc and Broussard Ford, Inc., and it dismissed the suit with prejudice as to both defendants. Defendant Ford Motor Company has answered, without excepting, and the dismissal as to it thus was not proper. The dismissal as to LeBlanc and Broussard Ford, Inc., should have been without prejudice. See Code of Civil Procedure Article 933 and Comments thereunder.
The petition states a cause of action against defendant LeBlanc and Broussard Ford, Inc., and the district court erred, therefore, in sustaining the exception of no cause of action filed by that defendant. For that reason, that part of the judgment appealed from which sustains the exception of no cause of action filed by LeBlanc and Broussard should be reversed. Since we have concluded that the suit must be dismissed without prejudice on the exception of prematurity filed by LeBlanc *540 and Broussard Ford, Inc., however, we consider it unnecessary to expressly include in our decree a reversal of the district court's judgment insofar as it sustained the exception of no cause of action filed by that defendant.
Accordingly, the district court's judgment is reversed insofar as it dismisses the suit as to Ford Motor Company, and the case is remanded to the trial court for further proceedings as to that defendant. Insofar as LeBlanc and Broussard Ford, Inc., is concerned, the judgment appealed from is amended to decree that the exception of prematurity filed by that defendant is sustained, and that the suit is dismissed without prejudice as to LeBlanc and Broussard Ford, Inc. As thus amended, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by plaintiff-appellant.
Amended and affirmed in part; and reversed and remanded in part.
WATSON, J., concurs in the result.
DOMENGEAUX, J., dissents and will assign written reasons.
DOMENGEAUX, Judge (dissenting).
I respectfully dissent.
The majority admits that plaintiff's petition was filed under C.C. Art. 2545 (bad faith vendor). Additionally, it correctly states that defendant's exceptions of prematurity and no cause of action were based upon plaintiff's failure to tender for repair pursuant to the 1974 amendment to C.C. Art. 2531 (good faith seller).
The majority satisfies itself with a vague statement concerning the applicability of the 1974 amendment to C.C. Art. 2531 to good faith vendors, but makes no mention of the effect of the amendment upon vendors, in bad faith, who are covered by C.C. 2545. I feel that this issue is crucial and at the very center of this dispute, and find that the majority opinion lacks the emphasis necessary to enunciate a clear rule concerning the applicability of the amendment to the latter statute.
Concisely stated, I feel that the 1974 amendment to Civil Code Article 2531[1] (allowing a good faith vendor a right to repair) has absolutely no effect upon Civil Code Article 2545. The amendment to C.C. 2531 provides that before the redhibitory action can be brought against a good faith seller, he must be first afforded an opportunity to repair the thing sold if it be defective. Only if this good faith vendor fails or refuses to repair or remedy the defect does the vendee's right to sue in redhibition arise.
On the other hand, C.C. 2545 concerns itself with the seller who knew of the defects at the time of the sale but failed to declare them. Such a vendor is deemed to be in bad faith, and his liability is greater than that of his honest counterpart. While the good faith seller is bound only to restore the purchase price and expenses occasioned by the sale and for preservation of the thing, the bad faith seller is liable, in addition, for damages resulting from the sale and for attorney's fees necessitated by the buyer's prosecution of the redhibitory action.
This differential treatment of vendors based upon good and bad faith is not a new concept in the civil law. The dichotomy in treatment and liabilities between these respective sellers can be traced from the Roman law, through the French Civil Code, and to our very own statutes dealing with the subject. I refer to the excellent Law Review Article by the late Professor *541 Clarence J. Morrow at 14 Tul.L.Rev. 529, in which it is stated:
"Articles 1645 and 1646 of the French Code are two of the most important provisions in the law of warranty, and about them has raged perhaps the greatest controversy in the whole field.
If the vendor knew of the defects of the thing, he is bound not only to return the price which he has received, but he is also liable to the purchaser for all damages.
If the vendor was ignorant of the defects of the thing, he shall only be bound to return the price and to reimburse to the purchaser the expenses occasioned by the sale (frais occasione's par la vente).

It would seem to be perfectly obvious that these articles attempt to consecrate a distinction between the respective liabilities of good faith and bad faith vendors. If the vendor was in bad faith, in that he sold the goods knowing their defective nature, he is to be penalized to the extent not only of returning the price to the vendee, but also of paying the latter damages. On the other hand, if the vendor was in good faith, and did not know of the defects, he is bound to return only the price and the frais occationes par la vente, expenses occasioned by the sale.. . . . . It will be remembered that in the Roman law the vendor who sold, knowing of defects, was guilty of dolus and was liable for damages to the vendee, whereas the innocent vendor, while theoretically liable for damages, practically could avoid them because the right against him was enforceable only by the jus retentionis of the defective goods. Moreover, these articles, like the others in this section of the Code, were taken from Domat and Pothier, whose writings reflect the Roman distinction of liability between good and bad faith vendors." (Emphasis added)
In a separate Article found at 13 Tul. L.Rev. 560, the same author further discussed the rationale for making the distinction.
"The Louisiana Civil Code allows the positive interest where the seller fraudulently asserts an inexistent quality or conceals known vices of the thing.[C.C. 2545] It may be urged, by way of argumentum a contrario, that these provisions are exceptional in granting compensation beyond the negative interest. Such an argument would overlook the fact that these articles are but applications of the fundamental precept imposing the duty of good faith in contractual relations, which springs up at the very inception of the contract. Therefore, fraud in the inducement, as well as in the performance, entitles the victim to the positive interest." (Emphasis added)
Thus it is clear that the civil law has always treated the bad faith seller more harshly than the honest vendor. Our Civil Code has adhered to the theory upon which this logical distinction is based. This fact is further evinced by the existence of the longer prescriptive period applicable to the bad faith seller (see C.C. Articles 2534 and 2546).
In 1974 the legislature amended C.C. 2531, expanding the rights of the good faith seller. There was, however, no similar amendment to C.C. 2545, and the opportunities of the bad faith seller remain more restricted, as they have always been. The legislature's discrimination in favor of the good faith seller is consistent with the history and theory of the civil law in this area.
It is very clear to this writer, and I wish to emphatically state, that under no circumstances is the seller who is in bad faith entitled to an opportunity to repair, remedy or correct the defect in the thing sold before the buyer may institute the redhibitory action.
*542 However, even though the majority seems to accept the above argued line of reasoning, they feel that if the redhibitory action is brought under the theory of C.C. 2545 (as was done in this case) an exception of prematurity, based upon failure to tender for repair under C.C. 2531, should be considered. This contention I cannot accept.
The redhibitory actions brought under C.C. 2531 and C.C. 2545 are based upon different theories, i.e. good and bad faith sales respectively. I humbly admit that I am completely at a loss to understand how a plaintiff's action can be considered premature based upon his failure to meet a condition which is not a requisite to the institution and maintenance of the sui tunder his theory of the case.
Following the majority opinion, the buyer who sues under C.C. 2545 will have to litigate the entire issue of good or bad faith at the trial on the exception of prematurity. This issue is crucial to the success of an action brought under 2545, and I do not believe that such a case should be tried on exceptions. The majority is concerned that the good faith vendor may be forced to litigate under 2545, with success, and then be subjected to a second lawsuit should the vendee meet the requirements of C.C. 2531. I believe this approach is unrealistic. If a vendee has no basis for allegations of bad faith against his seller, he will gain no advantage, and in fact will endure unnecessary hardship and expenses in prosecuting a frivolous claim. On the other hand, if there is some basis for an assertion of bad faith on the part of the vendor, the issue should be decided at a full trial on the merits.
However, I feel that the above discussion addressed to the majority's fear of "double jeopardy" of the good faith seller may be academic. I have serious doubts that the exception of prematurity is applicable to a suit based upon even C.C. 2531.
Prematurity is raised by the dilatory exception. C.C.P. Art. 926. The function of the dilatory exception is defined by C.C.P. Art. 923:
"Art. 923. Functions of exceptions
The function of the declinatory exception is to decline the jurisdiction of the court, while the dilatory exception merely retards the progress of the action, but neither exception tends to defeat the action. The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." (Emphasis added).
I believe that a careful reading of C.C. 2531, as amended, clearly shows that the vendee has no basis for the redhibitory action unless the seller cannot or will not repair, remedy, or correct the defect in the thing sold. Until the seller has failed or refused to meet this primary obligation, the buyer has no cause of action under the second clause of paragraph one of C.C. 2531. See the Article at 49 Tul.L.Rev. 484, 486, discussing the effects of the 1974 amendment to C.C. 2531 in which it is stated that:
"The noted amendment purports to affect the redhibitory action in at least four ways: (1) by providing that, as a prerequisite to the maintenance of the action, a buyer must afford the seller an opportunity to remedy the defect. . ." (Emphasis added).
To state it another way, the law provides no remedy against the good faith seller who has not been afforded an opportunity to repair or correct a defect in the thing sold. The obligation of the good faith seller is only that of repairing or remedying the defect. If he is unable or unwilling to remove the vice, then and only then does the obligation of the seller to return the purchase price arise.
*543 By definition, the dilatory exception cannot "defeat the action". Only the peremptory exception can serve that function. See the case of Pringle Associated Mortgage Corporation v. Eanes, 211 So.2d 399 (La.App. 1st Cir. 1968) in which the court said:
"Where the obligation presently exists but the right to enforcement has not accrued, either because the term for enforcement has not expired or because of the nonperformance or nonoccurrence of some act upon which enforcement is conditioned, the objection of prematurity falls within the classification of a dilatory exception which must be plead in limine litis." (Emphasis added).
The dilatory exception of prematurity presumes the existence of an obligation but addresses itself to the untimely filing of an action for enforcement of that obligation. Since the seller's obligation to return the purchase price does not arise until after he has either failed or refused to repair the thing sold, I must conclude that the exception of prematurity is inapplicable to the situation presented by the instant litigation.
But, assuming arguendo, that the exception of prematurity can be applied in the case before us, I am of the opinion that no basis exists for the sustaining of that objection. Under the theory of the majority, two things must be shown before the exception of prematurity can be sustained against a redhibitory action brought under C.C. 2545. First, there must be proof of good faith on the part of the vendor to invoke the "prerequisite" of "tender for repair" necessary under C.C. 2531. Secondly, once good faith has been shown, the vendor must prove that the thing sold has not been tendered for repair.
Generally, for purposes of the trial of an exception, all well pleaded material allegations of fact in a plaintiff's petition must be accepted as true. This leads one to the inevitable conclusion that the burden of proof lies with the exceptor. In the case at hand, the exceptions of prematurity and no cause of action were directed solely to the issue of whether tender for repair had been made by the vendee. There was absolutely no testimony relative to the seller's good or bad faith which warranted a conclusion that the vendor knew not of the defects at the time the thing was sold. Since the plaintiff enjoys a presumption of the factual veracity of his pleadings, I feel that only strong, direct testimony concerning the seller's good faith could have overcome the allegations of bad faith in plaintiff's petition. A careful study of the record reveals that no such evidence was introduced, since the entire thrust of the exceptions was toward the issue of lack of tender for repair. Thus, even accepting the majority's position that the exception of prematurity is applicable in this case, there are no facts to support the sustaining of that objection.
I would reverse the trial judge's sustaining of the exceptions of prematurity and no cause of action and remand this case for a trial on the merits.
For the above and foregoing reasons I respectfully dissent.
NOTES
[1] I agree with the majority's attempt to give credence to the legislature's 1974 amendment to C.C. 2531, which was obviously an effort to legislatively overrule the case of Prince v. Paretti Pontiac, supra. However, I recognize the confusion created by the illogical reference to C.C. 2521 contained in said amendment. Since the defective reference is so obvious I feel that the legislature should clarify its intent in this matter.