SYSTEM FUELS, INC.,
Plaintiff-Appellant,

v.

BETHLEHEM STEEL CORPORATION,
Defendant-Appellee, Third Party
Plaintiff-Appellant,

v.

CHEVRON, USA, INC., et al., Third
Party Defendants-Appellees.

No. 80–3288.

United States Court of Appeals,
Fifth Circuit.
Unit A
May 20, 1981.

**470**

Herschel L. Abbott, Jr., John J. Carney, New Orleans, La., for plaintiff-appellant.

James J. Morrison, Jr., New Orleans, La., for Grant Oil Tubular Corp.

Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Cicero C. Sessions, Harvey L. Strayhan, Linda S. A. Burke, New Orleans, La., for Bethlehem Steel.

Esmond Phelps, II, New Orleans, La., for The Babcock & Wilcox Co.

Donald R. Abaunza, Thomas M. McNamara, New Orleans, La., for Chevron, U.S.A., Inc.

T. H. Eskridge, Tulsa, Okl., Wiley G. Lastrapes, Jr., C. Manly Horton, Jr., New Orleans, La., for Bovaird Supply Co.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

WISDOM, Circuit Judge:

The issue in this diversity case is whether the plaintiff's complaint was filed within Louisiana's one-year prescription period for redhibition actions, La.Civ.Code art. 2534. We affirm the district court's holding that the action is prescribed.

This suit involves defective steel pipe sold to the plaintiff System Fuels, by the defendant, Bethlehem Steel. In April 1977 a representative of System Fuels called a representative of Bethlehem to arrange a supply of pipe needed for an oil and gas drilling project. Bethlehem bought 17,000 feet of pipe from other manufacturers and sold it to System Fuels. Later, in October, Bethlehem bought another 300 feet of pipe and sold it also to System Fuels. When System Fuels first attempted to use this pipe in March 1978, it discovered by hydrostatic pressure testing that the pipe was defective. Subsequent investigation showed that the pipe had become embrittled because of exposure to hydrogen sulfide.

On March 4, 1978, System Fuels notified Bethlehem of the defect in the pipe. There followed a series of letters, telephone calls, and conferences between the vendor and vendee and physical testing of the pipe. On August 9, 1978, System Fuels submitted a formal claim to Bethlehem, demanding a refund of the purchase price and damages. After further correspondence, Bethlehem in

December 1978 denied liability for the defects and refused System Fuels's claim.

System Fuels filed this suit against Bethlehem on February 20, 1979, asserting causes of action for redhibition and breach of warranty for its purchase of tubular products in April and October of 1977. Bethlehem answered and filed third-party complaints against its suppliers. In January 1980 the district court granted Bethlehem's motion for summary judgment on the ground that System Fuels's redhibition claim was prescribed. The court reserved ruling on prescription of the warranty claim, but System Fuels later conceded that if its redhibition claim was prescribed its warranty claim was also prescribed. Accordingly, the court entered summary judgment for Bethlehem. The third-party claims, of course, became moot.

█ It is conceded that Bethlehem is a good faith seller, in the sense that it did not know of the latent defect in the pipe it sold to System Fuels. The relevant prescription period, therefore, is that specified in La.Civ. Code art. 2534: "The redhibitory action must be instituted within a year, at the farthest, commencing from the date of sale." It has long been established, however, that where a seller attempts to repair the defect, prescription does not begin until that attempt is abandoned. *E. g., Bison v. LaHood*, La.App. 1980, 390 So.2d 920; *Insurance Planning Service Corp. v. Mercedes Benz*, La.App. 1980, 387 So.2d 658; *de la Houssaye v. Star Chrysler, Inc.*, La.App. 1973, 284 So.2d 63, *cert. denied*, 286 So.2d 662; *Mid City Finance Co. v. Coleman*, La. App. 1970, 232 So.2d 918. That exception applies not only to physical repairs but to verbal or written statements that lead a buyer to believe that the defects will be remedied. *Sweeney v. Vindale Corp.*, 5 Cir. 1978, 574 F.2d 1296; *Robertson v. Jimmy Walker Chrysler-Plymouh, Inc.*, La.App. 1979, 368 So.2d 747; *Weaver v. Fleetwood Homes*, La.App. 1976, 327 So.2d 172.

█ System Fuels makes three arguments why its claim is not prescribed. First, it contends that the sale of the pipe was conditioned on hydrostatic pressure testing. Hence, the sale was not completed until March 3, 1978, when the test was conducted,[1] and since the suit was filed in February 1979, it is timely. In fact, there is no evidence that hydrostatic testing was a condition to the sale. On the contrary, the sales documents expressly made the sale conditional on electronic testing, but made no mention of hydrostatic testing. System Fuels had paid the entire purchase price long before March 1978. At most, System Fuels shows that Bethlehem had honored claims based on defects revealed by hydrostatic testing. If true, however, that proves only that Bethlehem fulfilled its duties under the law of redhibition, not that the sales were conditional.

█ Second, System Fuels argues that the case falls within the exception for attempted repairs. It is clear that Bethlehem never attempted any physical repair to the pipe; indeed, pipe damaged by hydrogen sulfide cannot be repaired sufficiently to permit the intended use. The impossibility of repair was not known, however, until July 13, 1978, when the cause of the failures was discovered. If Bethlehem had led System Fuels to believe that Bethlehem would repair the pipe, then System Fuels's suit would be timely because it was filed within a year of the date of that discovery. We agree with the district court, however, that none of Bethlehem's communications to System Fuels could plausibly have induced such a belief. Lacking any express promise to repair, System Fuels relies on an implied promise alleged to arise out of the course of prior dealings between the parties. But System Fuels does not allege that Bethlehem had ever repaired faulty pipe—only that it had honored its redhibitory obligations to replace the product or refund the price. That is not sufficient to stop the running of the prescription period under art. 2534.

---

**1.** Alternatively, System Fuels might say that the sale was conditional on successful hydro-

static testing; in that case, the sale was never completed at all.

Finally, System Fuels argues that art. 2534 has been modified by the 1974 amendment to art. 2531. The amendment was passed in part to overturn the Louisiana Supreme Court's decision in *Prince v. Paretti Pontiac Co.*, La. 1973, 281 So.2d 112, holding that a buyer need not allow a seller to repair defects before bringing a redhibition action. The amended article provides in part that:

> The seller who knew not the vices of the thing is bound only to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.[2]

System Fuels argues that, because the amended article gives the seller the right to repair rather than suffer rescission, it follows that the prescription period is tolled while the buyer awaits repair. Under this interpretation, the buyer may suspend the running of prescription by merely notifying the seller of the defect; the period does not begin to run again until the seller definitely notifies the buyer that no repair will be made.

■ We cannot agree with this interpretation. It is not clear whether art. 2531 requires the buyer to make some affirmative tender of the merchandise for repair, or whether he need only stand ready to permit repair if the seller, on his own initiative, offers it.[3] If the latter, then art. 2531 has no affect on prescription under art. 2534. In nearly any civil suit, the hypothetical possibility exists that the defendant may short-circuit the plaintiff's cause of action by offering to restore his rights, but that possibility has never been thought to affect prescription. If a tender for repair is required, the problem is more complex. We need not decide whether a demand that clearly calls upon the seller to make repairs would suspend prescription until the seller responds, for System Fuels made no such demand here. Whatever the answer to that question, we hold that mere notice of the defect does not suspend prescription. Assuming that such notice would satisfy the requirement of tender for repair, it never-

---

2. The old article read:

> The seller who knew not the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses.

The amendment also provides for an action over by the seller against the manufacturer. The reference to article 2521 is surplusage, resulting from a concurrent but unsuccessful attempt to amend that provision. *Jordan v. LeBlanc & Broussard Ford, Inc.*, La.App. 1976, 332 So.2d 534; *Legislative Symposium—Civil Code Amendments*, 35 La.L.Rev. 639 (1975); Note, 49 Tul.L.Rev. 484 (1975).

3. The amendment to art. 2531 speaks in terms of the seller's duty, not the buyer's. As one commentator has restated the rule, the article

> seems to place the vendor under a clear duty to attempt repairs. As written [sic], a more stringent obligation, *i. e.*, return of the price, is imposed upon him only if he fails or refuses. The buyer should not be allowed to hinder the seller from satisfying his statutory duties and, as a result, expose him to more onerous burdens.

Comment, 35 La.L.Rev. at 641–42. It does not follow that the buyer must take the initiative in demanding repair; he must simply refrain from refusing to permit repair. Thus, the courts have spoken in terms of the seller's right only to an *opportunity* to repair. *Jordan v. LeBlanc & Broussard Ford, Inc.*, La.App. 1976, 332 So.2d 534; *Edwards v. Port AMC/Jeep, Inc.*, La.App. 1976, 337 So.2d 276, *cert. denied*, 339 So.2d 854; *see Benard v. Bradley Automotive*, La.App. 1978, 365 So.2d 1382; Note, 49 Tul.L. Rev. at 487–88. Nevertheless, one court has suggested in dictum that tender for repair is required. *Associates Financial Service Co. v. Ryan*, La.App. 1980, 382 So.2d 215. (The same court made the same suggestion in *Wiltz v. Dixie Auto Sales, Inc.*, La.App. 1975, 315 So.2d 811. In *Wiltz*, though, the context and citations show that the court was confusing duty to tender for repair with the established duty of a redhibition plaintiff to tender the merchandise back to the seller entirely as a condition on his right of rescission. *See Slay v. Ater*, La. App. 1974, 305 So.2d 691; *Breaux v. Winnebago Industries, Inc.*, La.App. 1973, 282 So.2d 763. The *Ryan* court did not cite *Wiltz*).

theless leaves the burden on the seller to propose repair as a solution to the dispute. As we noted before, the possibility that the seller might do so, on his own initiative, does not affect prescription.

The later of the two sales in this case was completed in October or November 1977, when the last of the pipe was electronically tested. This suit was filed on February 20, 1979. We have found that there was no tolling of prescription. Therefore, the suit was not filed within one year of the date of sale, as required by art. 2534. The judgment of the district court is AFFIRMED.