SARTAIN, Judge.
Plaintiff, Vignes-Bombet Co., Inc. (VBC), filed this suit on open account against Willie Mae Rowe and Shirley B. Jackson doing business as the Be Quick Grocery for the price of certain quantities of liquor delivered by plaintiff to the Be Quick Grocery during December of 1970. A judgment of default was rendered against Willie Mae Rowe and she was not a party to the trial proceedings. Shirley B. Jackson answered plaintiff’s suit and denied any liability for the alleged indebtedness. Following a trial on the merits the district court rendered judgment with oral reasons therefor in favor of plaintiff and against the remaining defendant in the amount of $1,279.95. From that judgment defendant has taken this devolutive appeal.
Defendant contends that he was only an employee of Willie Mae Rowe and the Be Quick Grocery and thus, should not be held personally liable for the indebtedness owed VBC.
VBC takes the position that Willie Mae Rowe and Shirley B. Jackson were either partners, co-proprietors or joint venturers in the Be Quick Grocery and that as such Jackson should be held liable for this debt.
The trial court found that Jackson had some proprietary interest in the business and thus imposed liability on him for this debt. The judge a quo summarized the pertinent facts and testimony in his oral reasons for judgment as follows:
“From the testimony the court heard there is no doubt in my mind that Shirley Jackson and Willie Mae Rowe had a very close relationship. However, I am still confused after listening to all the testimony as to exactly what the relationship was. It was obvious to the court that Shirley Jackson had more than just an employee relationship at the Be Quick Grocery store. The question boils down to whether or not this relationship was such as to render him liable for this bill.
“He testified that he was manager of the meat market and when Mrs. Rowe was not there he managed the whole store and had to take care of the store entirely while she was sick and he could do such things as write checks, make deposits, order merchandise, et cetera. He testified that he owned none of the equipment in the store but had rented the equipment to her and said he could not be an owner at the same time he rented the equipment. He said that he got $50.00 a month in rental. He testified that he was paid $50.00 cash per week in salary, sometimes more, sometimes less, depending on what the store made.
“Willie Mae Rowe testified that she owned the business entirely and that Jackson worked for her as her assistant and that he started working about a year after she took over the store. She said she bought the equipment from him and paid something when she could depending on how good sales were. She said that defendant’s salary never changed but that if business was good she paid more on her equipment account with Jackson.
“Documents introduced in evidence indicated that all licenses, et cetera, were in her name and that the lease arrangement bore her name as sole lessee.
“John Smith testified. He works for VBC now; prior to that time he owned the Flamingo Lounge which was located just across the street from the Be Quick Grocery store and he went in the Be Quick store almost on a daily basis and said that he saw Shirley Jackson almost daily.
“Michael Kantrow, who is now president of the plaintiff corporation, testified that he called on the Be Quick Grocery while taking another salesman’s route and the only person he ever did business with was Jackson.”
In addition, we note that Jackson’s federal income tax returns for the years 1969, *891 1970, and 1971 were entered in evidence at the trial. On both the 1969 and 1970 returns Mr. Jackson listed his occupation as “self-managing store” and “store manager” respectively. On all three tax returns Mr. Jackson listed his income under miscellaneous income as “store income (commissions)” rather than listing it as income from “wages, salaries, tips, and etc.” There is further testimony in this record to the effect that Jackson helped Miss Rowe obtain the lease of the premises and his signature appears on the lease as a witness. Also, Miss Rowe testified that Jackson’s name was not entered in the payroll record book kept for the other store employees and she offered no explanation of why his name was not listed as an employee.
In holding that Jackson had some proprietary interest in the business the trial judge stated as follows:
“Of course none of this would establish that Jackson was an owner of the business because an employee could do all the things that Shirley Jackson did. An employee could order, make deposits, write checks, et cetera. What it boils down to, can the court take into consideration Jackson’s subsequent conduct; if so, then a pattern has been established which would make this court feel that Jackson did in fact possess some proprietary interest in the Be Quick Grocery store. I am satisfied that he has some kind of proprietary interest out there now. If I couldn’t take that into consideration, then I think plaintiff failed to establish by a preponderance of the evidence that Jackson possessed some kind of proprietary interest. Taking into account, of course, that usually subsequent conduct is inadmissable, as a general rule, the court feels in this particular case, in view of the circumstances of the case, that subsequent conduct should be admissible to show what the real interests were in this case, because I do not think justice should be circumvented because of technical procedural rules and I am satisfied that whatever is going on out there at the Be Quick Gorcery store right now is approximately what was going on there when Willie Mae Rowe was running the store. It is too much of a coincidence for this court to imagine that Shirley Jackson is just an employee of the present permittee under those licenses of Eddie Lee Williams, or that he is just a paid employee of that permittee. I think he runs that business now. I think he ran the business before, and for reasons known only to himself, but which can be speculated upon, has parties interposed holding title to this particular business. He is in the same business place now that he was when this bill was contracted; the same equipment is in the business; he is there every day; the only time orders are made is when he is there. That is too overwhelming for me to conclude that he was only an employee for Miss Rowe. I think he had a proprietary interest and as such I think he is also responsible for the VBC bill.”
Defendant contends that the trial court erred in imposing liability based upon the evidence of Jackson’s subsequent transactions involving this grocery store and argues that this evidence was irrelevant and inadmissible. Defendant also contends that even if admissible this evidence does not establish that Jackson had any proprietary interest in the store at the time the debt sued upon was incurred.
Most of the evidence concerning Jackson’s subsequent business arrangements at this grocery store is found in his own testimony and that of Mr. John Smith. This evidence establishes that Jackson is still working in a grocery store located at the same location. Although the name of the store is different and the licenses and permits are now in the name of one Eddie Lee Williams, it is basically the same type of business as was carried on by the Be Quick Grocery. Jackson has the keys to the premises, signs the checks, makes deposits, and is the only one who places'and *892 accepts orders for the business. Just as in the case of the Be Quick Grocery the licenses to operate and the liquor permits are in the name of some person other than Shirley B. Jackson, presently Eddie Lee Williams.
As observed by the trial court, if this evidence is admissible a pattern of conduct has been established which preponderates to the conclusion that Shirley B. Jackson does have some proprietary interest in the business and has chosen to interpose certain other parties who hold the licenses and permits for that business in their names. Therefore, the pivotal issue is whether the trial court erred in admitting this evidence of Jackson’s subsequent conduct in connection with this business in order to prove that he had some proprietary interest in the store at the time this debt was incurred. We find no error on the part of the trial court in admitting this evidence, nor do we find error in the imposition of liability based thereon.
According to the provisions of L. R.S. IS :435, in order for evidence to be admissible it must be relevant to a material issue. We also note that for evidence to be relevant it must have some probative value and be reasonably connected to the transaction in question. Or review of all of the evidence in this record concerning Jackson’s connection with this grocery store, both at the time this debt was incurred and at the present time, convinces us that the evidence of Jackson’s subsequent conduct in connection with this business was relevant and of some probative value in determining whether he had some proprietary interest in this business.
In support of the contention that the evidence of Jackson’s subsequent conduct was irrelevant and inadmissible, defendant cites the case of Turner v. Item Co., 6 La.App. 270 (2nd La.App.1927). In that case the plaintiff attempted to prove that his son was killed through the fault of the defendant’s alleged employee while acting in the course and scope of his employment. During the course of the trial the plaintiff sought to introduce evidence of a contract between the defendant and a third party which conflicted with the terms of the written contract between the defendant and the alleged employee whose actions allegedly resulted in the death of plaintiff’s son. The court there held that this evidence was irrelevant and therefore inadmissible.
We find the cited case inapposite to the facts presented by the instant suit. In Turner the terms of the alleged employee’s business arrangement with defendant were contained in a written contract. In the case at bar the business arrangement between Jackson and Miss Rowe had not been reduced to writing. In addition, the evidence concerning Jackson’s subsequent conduct in interposing other persons as the owners, licensees, and permittees of this business is highly relevant to a determination of whether or not Jackson did in fact have a proprietary interest in the grocery store.
 In order to establish that one has some proprietary interest in a business enterprise it must be established that he is entitled to participate in the profits or losses and that he is allowed to exercise some right of control in the business. Walker v. Delahoussaye, 116 So.2d 884 (1st La.App.1959); Roberson v. Maris, 266 So.2d 488 (4th La.App.1972). The evidence in this record discloses that Jackson’s salary fluctuated to some degree depending upon the profits and losses of the store and that for a substantial period of time he exercised a right of control over the operations of this business. Therefore, we find no manifest error in the conclusion of the trial court that Jackson did in fact have some proprietary interest in the business.
Accordingly, for the above reasons, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.