BEER, Judge.
This matter is again before us, appealed from the district court action which resulted from our remand in Brouillette v. National Remodelers & Rebuilders, Inc., et al, 239 So.2d 375 (La.App. 4th Cir. 1970).
We had directed the adducing of additional evidence by appellee and appellants for the purpose of establishing “(1) the value of plaintiff’s services on a quantum meruit basis on the Wilshire contract; (2) the profits due plaintiff from the Wil-shire and the warehouse jobs; (3) the rebate due on the rent included in the operating costs of the July 31 statement (plaintiff is entitled to a judgment on half the rebate since net profits should increase by the amount of the rebate); (4) the amount of offset due the defendant corporation, if any; and (5) the value of the tools converted by defendant.”
We are now constrained to observe that the record falls short of fully accomplishing any of the above noted objectives. However, no useful purpose will be served by a further remand. We shall now deal with the issues on the basis of what is presently before us even though we have very little satisfactory evidence to work with, notwithstanding the length of the record. The matter has been pending for a number of years and the testimony and exhibits are incomplete and inaccurate. Many computations had to be made with a minimum of evidentiary support.
In this connection we have been guided by two separate lines of authority. *527 First, with regard to our overall responsibility to resolve the controversy where the evidence is sketchy and incomplete but unlikely to be improved upon, we follow the Supreme Court’s language in Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971) which says: “Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case.” This reasoning was reiterated by this court in Zesiger v. Dean, 247 So.2d 222 (La.App.1971) when we held:
“In cases where, although there is a legal right of recovery, an exact estimate of damages cannot be made, the courts nevertheless have the discretion to assess damages based upon all the facts and circumstances of the case. When it is clear that a plaintiff has sustained some damage as the result of the fault of defendant, plaintiff’s demands will not be rejected merely because he has not established the exact amount of compensable damage suffered. The mere failure or inability of one to prove his actual damages does not preclude him from receiving an award where it is shown that he is entitled to some damages.” (Citations omitted.)
In so far as the quantum meruit claim is concerned, we have followed Bascle v. Perez, 224 La. 1014, 71 So.2d 551 (1954), which holds as follows :
“ ‘ * * * the jurisprudence of the courts of this state [is] to the effect that where one employs the services of another without specifying what compensation will be paid therefor, or where one avails himself of the services of another in the performance of a task, he is bound to compensate the person so employed or who performs such a service. * * *. This jurisprudence is founded on the moral maxim of the law that no one ought to enrich himself at the expense of another.’ ”
In performing work on the Wil-shire apartment complex, appellee Brouil-lette mistakenly labored under the impression that his oral agreement with appellants Julian and Milton Loeb would be honored. The appellants induced Brouil-lette to perform work on Wilshire and received the benefits flowing from his efforts but they failed to live up to the agreement that would have recognized Brouillette’s labors with an appropriate share interest in the never formed “new” corporation. Thus, Brouillette is entitled to receive compensation for the time and effort he expended on Wilshire and will not be deprived recovery because the oral agreement with appellants was successfully avoided by them.
Appellee, having established his right to be compensated on quantum meruit shall recover for his services and for the time and labor required for them.[1] No specific formula is available to determine the reasonable value of such services. It is a matter of equity depending upon the circumstances of each case. Jones v. City of Lake Charles, 295 So.2d 914 (La.App.1974); Readco Industries, Inc. v. Myrmax Specialties, Inc., et al, 236 So.2d 573 (La.App.1970); Bordelon Motors v. Thompson, 176 So.2d 836 (La.App.1965).
VALUE OF BROUILLETTE’S SERVICES ON A QUANTUM MERUIT BASIS ON WILSHIRE
Whatever is due and owing Brouillette on the Wilshire construction work based upon quantum meruit is a debt of the appellants, Julian and Milton Loeb (hereafter, “the Loebs”) jointly and in solido and not of National Remodelers and Rebuild-ers, Inc. (hereafter, “National”) because those services were performed only for *528 those two individuals and not for the “old” corporation (National) nor for the “new” corporation that was never actually formed. The Loebs’ obligation to Brouil-lette is, in accordance with the previous judgment of this court, determined on the basis of quantum meruit based upon the various services which Brouillette performed in connection with Wilshire.
In this (and other) computations we believe that much weight must be given the report of Peat, Marwick & Mitchell & Company (hereafter, “Peat, Marwick”). That report (Schedule 3 thereof) shows a total of expenditures attributable to the work performed on Wilshire in the amount of $82,813.50.
We conclude that Brouillette, acting as general overseer on that job is entitled to quantum meruit based upon fifteen percent of the amount expended which totals $12,442.02.[2]
Brouillette’s services as rental agent and general promoter of the rental units for a period of slightly over two months entitle him to a quantum meruit claim for this activity at the rate of $600 per month for a total of $1,200.[3]
Acting in his capacity as finder, negotiator and general manager in connection with the ultimate acquisition of the Wilshire property at an advantageous price we conclude that Brouillette has, for these *529 services, a quantum meruit claim in the amount of $15,000.[4]
Thus, the total amount due Brouillette from Julian and Milton Loeb, jointly, individually and in solido in connection with these aspects of the litigation is $28,642.02.
AMOUNT DUE BROUILLETTE FROM NATIONAL REMODELERS & REBUILDERS, INC.
An amount is due Brouillette from National. However, Brouillette did not appeal the trial court judgment sustaining appellants Julian and Milton Loebs’ exception of no cause of action and dismissing them from liability on the contract with the corporation. By failing to appeal this decision, he is bound by that final judgment and can recover only against the corporation itself with respect to the claims against the “old” corporation. Neither the trial court nor this court can mod-lfy, revise, or reverse a judgment, or part of a judgment, in favor of a party who has neither appealed nor complained by way of an answer to an appeal. Post v. Rodrigue, 205 So.2d 67 (La.App. 4th Cir. 1967).
We find that Brouillette is entitled to a judgment against National for:
(1) Fifty percent of the net earnings of National for the period March 18, 1965 through August 31, 1966. That amount is figured by halving the figure of $24,199.56 which is described in Schedule 5 of the Peat, Marwick report entitled “Net earnings” and is . $12,099.78[5]
(2) An additional share of the “profits” on the jobs particularly described in our order of remand which we deem to include the warehouse jobs at 3205 Washington Avenue[6] and 2631 S. Claiborne Avenue [7], not fully recognized in the pro forma report of *530 Peat, Marwick in the amount of .$4,500.00
Additional adjustments must be made in calculating Brouillette’s award against National. These calculations are as follows:
(1) Brouillette is entitled to an adjustment in connection with the rebate due on the rent included in the operating costs of the July 31, 1966 statement figured at one half of $1,-800, all as is more particularly shown on Schedule 6, Section (3) of the Peat, Marwick report.
(2) Brouillette is entitled to the depreciated value of his tools which have been retained by the corporation. The value is set by reference to Schedule 4 of the Peat, Marwick report and amounts to $1608.26.
(3) National is entitled to a credit for advance against profits made to Brouillette in the amount of $6,500.
(4) National is entitled to a credit in the amount of $1,542.50 for the cost of materials and miscellaneous work furnished by the corporation in connection with repairs to Brouillette’s home.
(5) National is entitled to a credit for the depreciated value of the truck that has been retained by Brouillette which was worth $350.
(6) National is entitled to a credit for petty cash advanced to Brouillette in the amount of $14.50.
Upon making the necessary mathematical calculations, we find that Brouillette is entitled to a judgment against National in the net amount of $10,701.04.
WILSHIRE “PROFIT”
The quantum meruit award in favor of Brouillette and against the Loebs must cover Brouillette’s claim with regard to Wilshire. On the face of the remand order, it might appear that there is need for a computation of his alleged entitlement to some share of the “profit on Wilshire.” However, Brouillette’s quantum meruit award covers his hoped for share of the profit on the Wilshire job. The only reason that this court granted him a right to a quantum meruit recovery was to protect his interest as effectively as possible under the bizarre circumstances of this case. Specifically, it was to assure Brouillette that this “profit from the Wilshire job” which he could not — contractually—enforce would, nevertheless, be, at least to some extent, collectible on the basis of quantum meruit. That has been accomplished. No further award can be made under the circumstances.
THE STATE OF THE RECORD
The record does not support the $82,582.91 in solido judgment of the trial court. The plaintiff did not sufficiently develop the evidence sought by the remand and the judgment is excessive and unsupported by the testimony. Furthermore, Brouillette’s claim for accounting on his contract with National is hampered by the fact that the record is void of evidence that dearly establishes the true financial status of the corporation. Yet we feel that he is entitled to protection from the machinations of the Loebs who did, indeed, take advantage of him. Resolution of this issue has required analysis of the sketchy records available to this court. This evidence is incomplete and, in certain instances, totally inaccurate. For example, the available records indicate the cost of work done on the Washington Avenue warehouse job was only $1,768.02. Testimony at trial completely refutes this proposition, but then does not go forward to establish the true cost incurred. Opinions of appellee’s own experts not only conflict but are derived from inaccurate calculations. We were confronted with the task of determining the “profits” of Na *531 tional with almost no acceptable evidence to assist us. Mr. Gandolini testified his statement of profit and loss was tentative and in need of adjustment. Mr. Casey, the court appointed expert, indicated his dissatisfaction with the unavailability of needed documents. Neither party adduced sufficient evidence to form a satisfactory basis for clearly resolving this issue. But, under the mandate of Jordan v. Travelers Ins. Co., (supra) we work with what we have.
Careful review indicates that available evidence simply cannot support the trial court award. That court filed no reasons to explain how the judgment was computed and its failure to delineate any definitive reasons has caused us to conclude that they are, under the circumstances, speculative and must be disregarded.
The testimony adduced at trial is couched in the most general terms, especially as to any work Brouillette performed in appellants’ behalf. We have, however extracted all available evidence that could in any way assist in reaching an equitable decision.
The award to Brouillette on his demand for accounting must be rendered only against National and will have to be reduced to $10,701.04. The judgment against defendants, Julian and Milton Loeb, on Brouillette’s quantum meruit claim will have to be reduced to $28,642.02.
JUDGMENT
For the reasons stated above it is now ordered, adjudged and decreed that the judgment of the Civil District Court for the Parish of Orleans dated May 28, 1974 be annulled and set aside and it is now
Ordered, adjudged and decreed that there be judgment herein in favor of Plaintiff-Appellee, James Brouillette and against Defendant-Appellant, National Re-modelers and Rebuilders, Inc. in the full sum of $10,701.04, plus interest from date of judicial demand;
It is further ordered, adjudged and decreed that there be judgment herein in favor of Plaintiff-Appellee, James Brouillette and against Defendants-Appellants, Julian J. Loeb and Milton Loeb, individually, jointly and in solido in the full sum of $28,652.02 plus interest from date of judicial demand;
It is further ordered, adjudged and decreed that all costs, including the costs of this appeal, be paid by Defendants-Appellants, jointly and in solido.

Annulled, set aside and rendered.

. See: Gauguin, Incorporated v. Spring, 316 So.2d 858 (La.App. 1st Cir. 1975), rehearing denied August 26, 1975.

. After the purchase of Wilshire, Brouillette supervised the remodeling. He worked long hours, beginning each day at 6:00 a. m. and working until 8:00 or 10:00 p. m. each night. He was involved in very phase of the operation and made most of the purchases. Often he worked seven days a week. In this regard Mr. Gandolini testified that he had, on several occasions, seen Mr. Brouil-lette working at the Wilshire apartment complex on weekends. Work on the Wilshire apartments began in early February 1966 and ended in late July 1966.
Mr. Casey’s report to the court in his testimony indicates that the total cost of the Wil-shire Complex improvements was $82,813.50. All experts who testified have indicated that on “cost-plus” jobs a contractor is entitled to receive between ten and fifteen percent profit over cost. In this connection plaintiff also sought recompense for his design work. The only testimony to support any valuation of services in this regard is that submitted by witness Murray who stated that he would charge six percent of the cost for the designing of a new building. Witness Fox (who was not accepted by the court as an expert but whose testimony was offered on proffer) indicates that the design and shop drawings such as those apparently used by Mr. Brouillette are part of the contractor’s usual work product. Witness Kessels affirms the testimony of Fox to the effect that no extra charge is made by a contractor for field sketches done on the job. lie indicates that the charge for these field sketches is part of the commission received by the contractor and we make no award for this phase of the work.
Brouillette impliedly admits that a “clerk of the works” was not necessary for the Wil-shire job nevertheless, he seeks some additional payment for that work. However, both Fox and Kessels stated unqualifiedly that a clerk of the works was not needed for the type of job that was performed on the Wil-shire complex and we make no award for this phase of the work.
Unfortunately, the testimony adduced at the trial after remand is not very helpful in substantiating the actual services that were performed by Brouillette. Instead, counsel concern themselves with the opinions of experts relative to the cost of particular jobs without attempting to adduce the basic evidence that this court asked for in its original opinion. The record contains almost no acceptable evidence of the extent of the work performed other than the self-serving testimony of Brouillette.

. The record is not clear as to exactly how long Mr. Brouillette acted as a rental agent for the Wilshire Apartment complex. He testified that as far as he can remember he acted as an agent for the rental of the apartments for approximately two and one half months. He stated that six of the units of the complex were finished early, but he was not sure how many of the apartments he actually rented before he was fired by Mr. Julian Loeb. On cross-examination by defense counsel he admitted that in his role as a rental agent there were no advertising expenses. Two of the experts indicated that a rental agent would receive ten percent of the anticipated revenues to be received as a result of renting apartments in the Wilshire complex but there is no evidence to show how many — if any — he actually rented as a result of his services.

. The record establishes that the apartment complex was offered for sale by Mr. Sidney D’Armas and Mr. I. J. Kraiger for $150,-000; that Mr. Brouillette discussed all facets of the sale with these co-owners and handled the negotiations of the sale up until such time as the sale was consummated by Mr. Loeb for $120,000. Neither of the Loebs participated in the negotiations until the final offer of $120,000 was made by Mr. Milton Loeb. In this regard Mr. Gandolini testified that both Loebs, Brouillette and himself discussed the Wilshire deal frequently and had several meetings regarding the price and the profits to be derived from the Wilshire apartment complex. The testimony of the experts indicates that one who negotiates a sale should receive as his commission ten percent of the actual sale price. We find that Brouillette earned ten percent as commission plus a ten percent bonus for effecting a $30,000 saving.

. The Peat, Marwick report reflects two different income figures for the corporation for the period in question. The first figure found in Exhibit A of the report is $12,498.49. This figure represents the total profits of the corporation after deduction of the appropriate federal and state taxes. Schedule 5 of this report to the court calculated a “pro forma statement of earnings” in which the net earnings of the corporation was $24,199.56. Although it is difficult for us to determine which of these amounts should form the basis of our calculation, the latter figure is substantially in accord with the $26,291.09 figure offered by Mr. Gandolini. However, Mr. Gan-dolini’s figure was not utilized because of his admission that his accounting was merely a tentative statement in need of adjustment. Insofar as the Peat, Marwick examination was made in accordance with generally accepted auditing principles and utilized such tests of accounting records as were considered necessary under the circumstances, the $24,-189.56 figure was used in our calculation.

. Brouillette is entitled to share in the estimated profit on the warehouse'at 3205 Washington Avenue. We are obliged to make a determination of that profit figure with little satisfactory evidence to guide us. While the pro forma statement of net profit of Peat, Marwick includes a twenty percent profit for this job, the calculation is based upon reconstructed records which we believe do not properly reflect the actual cost incurred in performing work on the warehouse. We have concluded it is necessary to attribute some additional gross profit to the job in order to reach a more equitable result in determining the share of profit due Brouillette.

. The same general situation as noted in Footnote 5 is true with respect to the warehouse at 2631 S. Claiborne Avenue.