382 So.2d 215 (1980)
ASSOCIATES FINANCIAL SERVICES COMPANY, INC., Plaintiff-Appellee,
v.
William J. RYAN, Defendant-Third Party Plaintiff-Appellee,
Huffman Motor Company, Third Party Defendant-Appellant.
No. 7437.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
*216 William P. Polk, Alexandria, for defendant-appellant.
George Griffing, Jonesville, Sanders, Downing, Kean & Cazedessus, Robert A. Hawthorne, Jr., Baton Rouge, Virgil Purvis, Jr., Jonesville, for plaintiff-appellee.
Before DOMENGEAUX, FORET and SWIFT, JJ.
*217 FORET, Judge.
Associates Financial Services Company, Inc. (hereinafter Associates) brought suit against the defendant, William J. Ryan, to enforce payment of a note secured by a chattel mortgage, in favor of Associates, on a 1973 Mack truck, as a result of Ryan's failure to pay an installment. Ryan answered the suit, reconvened against Associates, and third partied the seller of the truck, Huffman Motor Company, Inc. (hereinafter Huffman), alleging that the truck had redhibitory vices at the time of the sale. Huffman denied these allegations and reconvened against Ryan on a separate claim alleging that Ryan owed it $4,348.44 for repairs made to certain other vehicles owned by Ryan.
Associates moved for and was granted a summary judgment recognizing their chattel mortgage and ordering that the vehicle in question be sold at a sheriff's sale, at which Associates acquired the vehicle, being the highest bidder at $2,500.00.[1] This judgment is final and is not presently before us.
The trial court rendered judgment as follows:
1. Rescinding the sale from Huffman to Ryan of the Mack truck and returning the truck to Huffman;
2. Ordering Huffman to pay to Associates on behalf of Ryan the sum of $20,482.16, thereby discharging Ryan's obligation to Associates;
3. Granting judgment in favor of Ryan on his reconventional demand against Huffman in the sum of $14,994.99, together with legal interest from date of judicial demand;[2]
4. Granting judgment in favor of Huffman on its reconventional demand against Ryan in the sum of $4,348.44, together with legal interest thereon from date of judicial demand, until paid;
5. Ordering that the cost of the proceedings be borne equally by Ryan and Huffman.
From this judgment, Huffman has appealed, seeking a reversal of that part of the trial court's judgment rescinding the sale, granting judgment in favor of Ryan on his reconventional demand, and ordering Huffman to discharge Ryan's obligation to Associates.
The first issue raised is whether or not evidence dealing with the history of the subject vehicle prior to its acquisition by Huffman is relevant. Counsel for Huffman argues that it is not. We disagree.
For evidence to be relevant, it must have some probative value and be reasonably connected to the transaction in question. Vignes-Bombet Company, Inc. v. Rowe, 288 So.2d 889 (La.App. 1 Cir. 1973). We are of the opinion that the evidence of the history of the Mack truck in question prior to its acquisition by Huffman in a used condition is relevant to the issue sub judice and is admissible. Surely the history of a thing is relevant in an action in redhibition, especially when the buyer is attempting to prove that the seller knew of the vice or vices and was in bad faith. Evidence should not be excluded where it is admissible to prove any hypothesis included in plaintiff's alleged cause of action. Goltzman v. Goltzman, 372 So.2d 1262 (La.App. 3 Cir. 1979).
On February 9, 1976, William J. Ryan purchased from Huffman Motor Company, Inc., located in Alexandria, Louisiana, a used 1973 Mack truck. This truck was acquired *218 by Huffman from the Roy O. Martin Lumber Company as a trade-in on a new GMC truck purchased by the lumber company.
The truck had been overhauled twice, once by Shreveport Mack Sales, Inc. in March of 1975, and once by Huffman in November of 1975. The truck was overhauled a third time in May of 1976, four months after it had been purchased by Ryan. Additional maintenance and repair work was necessitated throughout the life of the truck, some of which included the following, which we take the liberty of copying from counsel for defendant-appellee's brief:

 WHILE THE TRUCK WAS OWNED BY
 ROY O. MARTIN LUMBER COMPANY
 -------------------------------------
PLAINTIFF'S DATE NAME OF SHOP COMPLAINT
EXHIBIT NO.
-----------------------------------------------------------------------------------------
 6 10-23-73 Monroe Mack Sales Oil seal on ax.drive
 5 12-26-73 Shreveport Mack Sales Check for oil leak at front
 of truck
 5 1-10-74 Shreveport Mack Sales Stop fuel leak
 2 10-12-74 Shreveport Mack Sales Check for bad oil leak and
 repair; tighten oil dipstick
 tube at bottom for leaking
 oil; check for getting
 water in oil
 4 11-19-74 Shreveport Mack Sales Replace rear main seal
 10 1-21-75 Jackson Mack Sales Repair oil leak and oil filter
 11 2-11-75 Jackson Mack Sales Replace U joint behind
 front rear end
 1 3-10-75 Shreveport Mack Sales Check for getting water
 in oil; overhaul engine
 complete
 8 7-18-75 Monroe Mack Sales Oil leak
 3 9-30-75 Shreveport Mack Sales Check for oil leak
 7 10-24-75 Monroe Mack Sales Wheels locked up south
 of Tallulah
-----------------------------------------------------------------------------------------
 WHILE TRUCK WAS OWNED BY
 HUFFMAN MOTOR COMPANY
 -------------------------------------
 17 11-26-75 Huffman Motor Co., Check oil leaks
 Inc.
 17 12-20-75 Huffman Motor Co., Check for fuel leak
 Inc.
-----------------------------------------------------------------------------------------
 WHILE TRUCK WAS OWNED BY
 WILLIAM J. RYAN
 -----------------------------
 13 2-9-76 Huffman Motor Co., Service call to check for
 Inc. no power
 14 4-7-76 Huffman Motor Co., Replace fan, fan hub and
 Inc. repair radiator

*219
 15 5-12-76 Natchez Equip. Co. Repair oil light
 9 5-28-76 Monroe Mack Sales Complete engine overhaul
 costing $5,295.59

Mr. A. M. Tomlinson, a former employee of Ryan, testified that he had trouble with the truck in Mississippi. As a result of this trouble, he had to call Ryan, who in turn informed Huffman Motors about the difficulties. Huffman Motors sent a wrecker to Mississippi to retrieve the truck and bring it back for repairs. Tomlinson testified that it was necessary to put oil in the truck both when going to Hattiesburg, Mississippi from DeRidder, Louisiana, and when returning from Hattiesburg to DeRidder. He also said that it was necessary to return the truck to Huffman on six or seven occasions due to problems that arose with the operation of the truck. Tomlinson relates that on a trip he made to Brooklyn, New York, that it was necessary to put one gallon of oil in the truck for every three hundred to three hundred fifty miles that the truck was driven. A universal joint twisted out on a trip to Pennsylvania, which necessitated repairs.
Leo Ryan, the plaintiff's brother, testified that it was necessary to put from one gallon to ten quarts of oil in the truck when it would stop at his service station in Jonesville in route to Hattiesburg from DeRidder. Additionally, he noted that the truck did not have enough power to pull the loads which it was supposedly designed to pull. He stated that on a trip that he had made with Mr. Tomlinson to Memphis, Tennessee; Pennsylvania; and New York, that it was necessary that they stop on several occasions and buy oil in order to keep the truck operating.
William Ryan, plaintiff, took the truck back to Huffman for repairs more than five times. He testified that some of these repairs were made without cost to him, the truck still being under warranty. Ryan testified, as did Tomlinson, that the truck broke down in Mississippi while it was being driven by Tomlinson. Tomlinson had called Ryan and told him that the truck was making unusual noises and that he did not feel that it was safe to drive the truck. Huffman was notified about this and subsequently went and got the truck and brought it back to their shop where they made valve adjustments on it. A Mr. Rudd, an employee of one of the lessees of the truck, called Ryan from Florida and stated that there was a knock in the motor. Ryan had to hire a wrecker to drive to Florida and pull the truck back to Huffman Motors. Some months later the truck broke down again while it was being operated by a driver of another lessee, Pine Belt.
The redhibitory action is one which comes squarely within the scheme of our Civil Code, in particular, Civil Code Article 2520, which provides:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
To prevail in an action for redhibition, the purchaser must establish that the thing sold is absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed that the purchaser would not have made the purchase had he known of the defects. He must also prove that the defects existed at the time of the purchase, but were neither known nor apparent to him, and that seller could not, or would not, correct the defects when given the opportunity to do so. LSA-C.C. Articles 2520, 2521, 2530, 2531; Purvis v. Statewide Trailer Sales, Inc., 339 So.2d 403 (La.App. 1 Cir. 1976).
*220 When a seller is in good faith, he must be given an opportunity to repair the thing before a redhibitory action can be brought. LSA-C.C. Article 2531;[3]Jordan v. LeBlanc and Broussard Ford, Inc., 332 So.2d 534 (La.App. 3 Cir. 1976). If a seller is in bad faith, LSA-C.C. Article 2545 applies. A buyer is not required to tender the defective product to a manufacturer before instituting suit. Laughlin v. Fiat Distributors, Inc., 368 So.2d 742 (La.App. 3 Cir. 1979); Bernard v. Bradley Automotive, 365 So.2d 1382 (La.App. 2 Cir. 1978). The logic of this is that LSA-C.C. Article 2531 requires that a tender be made prior to the institution of a suit in redhibition if the seller is in good faith. A seller is in good faith if he did not know of the vices of the thing. Since a manufacturer is presumed to know the vices of the thing he sells, he can never be in good faith if a defect in fact exists. Burns v. Lamar-Lane Chevrolet, Inc., 354 So.2d 620 (La.App. 1 Cir. 1977). For this reason, our courts have held that a tender is not a necessary prerequisite to a suit in redhibition against a manufacturer. The same reasoning applies to a bad-faith seller, i. e., one who knows of the vice of the thing he sold but who failed to declare it. Therefore, a tender need not be made to a bad-faith seller prior to bringing a suit in redhibition.
The issue which now arises is, was Huffman a bad-faith seller. We think it was. A. M. Tomlinson testified that the truck was leaking oil when he and Ryan first picked it up at Huffman's lot. He stated that he told a salesman about the leak and was assured that the leak would be repaired. Tomlinson also testified that it was necessary to add oil to the crank case of the truck after having driven it approximately one hundred seventy-five miles. We are convinced that this testimony, in conjunction with the fact that numerous repairs were made to the truck both before and after Huffman acquired it, shows that Huffman was in bad faith. We are therefore of the opinion that a tender by Ryan was not necessary. In deciding as we do, however, we make the following observations.
Ryan was put in the unfortunate position of having to pay the note on the truck, pay for repairs done to the truck, pay for a driver's salary, and tender the truck to the seller for numerous repairs. It had been repeatedly tendered for repair, but to no avail. Obviously Ryan became unable to meet the payments on the truck, and it was subsequently seized, thereby making a formal tender impossible. Undoubtedly Ryan's inability to meet the payments on the truck resulted in part from the cost of repairs and the substantial amount of down time which was needed to make these repairs. It is not necessary to make a formal tender where such would be futile. Wiltz v. Dixie Auto Sales, Incorporated, 315 So.2d 811 (La.App. 3 Cir. 1975); Purvis v. Statewide Trailer Sales, Inc., supra.
After a full review of the record, we conclude that the defendant-third party plaintiff, Ryan, carried his burden of proof, and accordingly affirm the portion of the trial court's judgment rescinding the sale and ordering Huffman to discharge Ryan's obligation to Associates. Also, that portion ordering that the truck be returned to Huffman is affirmed.
We next address the question of Ryan's reconventional demand against Associates. We find this claim totally without *221 merit. Associates did nothing but finance the purchase of the truck. They are neither the seller nor manufacturer. For this reason Ryan's reconventional demand is dismissed.
The trial judge awarded the sum of $4,348.44 to Huffman as per their reconventional demand against Ryan. Ryan offered no defense to this claim, and we find that the record shows that none existed. Therefore, we hold that the granting of judgment in favor of Huffman and against Ryan in the sum of $4,348.44 is proper.
The next matter to be dealt with is the amount, if any, to be awarded to Huffman for the use of the truck. Ryan had the use of the truck from February 9, 1976, until approximately January 10, 1977. The truck was driven in excess of 15,000 miles during that time.
The seller of a thing is entitled to reimbursement from the purchaser for the latter's use prior to the rescission of the sale. LSA-C.C. Article 2531; Smith v. Max Thieme Chevrolet Company, Inc., 315 So.2d 82 (La.App. 2 Cir. 1975); Gour v. Daray Motor Co., Inc., 373 So.2d 571 (La.App. 3 Cir. 1979). The purpose for allowing a credit to the seller for the buyer's use of a vehicle is to return the parties as nearly as possible to the status quo. Nugent v. Stanley, 336 So.2d 1058 (La.App. 3 Cir. 1976); Gour v. Daray Motor Co., Inc., supra.
Our Supreme Court, in Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978), stated:
"Compensation for the buyer's use, however, ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair."
Ryan did derive a certain amount of use from the truck. However, our determination of this issue must be made in light of the numerous repairs and corresponding down time which were necessitated throughout the time Ryan had possession of the truck. In the past, this Court has calculated the amount due the seller for the buyer's use of a vehicle by multiplying $.08 times the number of miles driven before rescission of the sale. See Gour v. Daray Motor Company, Inc., supra, and Robertson v. Jimmy Walker Chrysler-Plymouth, Inc., 368 So.2d 747 (La.App. 3 Cir. 1979), writs denied, 371 So.2d 833 (La.1979). In this case, however, the exact number of miles the truck was driven prior to seizure and rescission of the sale is unknown. Mr. Ryan testified that the truck had been driven approximately 15,000 miles before it was overhauled in May of 1976. Plaintiff's exhibits No. 12 and 13 show that the odometer reading of the truck at the time of purchase was 341,671 miles. Plaintiff's exhibit No. 14 shows that on April 7, 1976, the odometer reading was 357,024 miles, for a distance of 15,353 miles. There is no other evidence in the record with regard to the total number of miles the truck was driven while Ryan had use of it. For this reason, we rely on the Supreme Court's language in Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (La.1971) which states:
"Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case."
This reasoning was followed by the Fourth Circuit in Brouillette v. National Remodelers and Rebuilders, Inc., 321 So.2d 525 (La.App. 4 Cir. 1975), and by the Second Circuit in Hardie v. Pylant, 375 So.2d 189 (La.App. 2 Cir. 1979).
We can assume that between April 7, and November, 1976, the truck was driven for a considerable number of miles in addition to the 15,000 miles mentioned above. Accordingly, in view of the cited jurisprudence, we feel that an award to Huffman for use of the vehicle by Ryan of $2,500.00 is justified.
We next address the issue of the amount of damages due to the third party plaintiff, Ryan.
Civil Code Article 2545 declares that a seller who knows the vice of the thing he sells and omits to declare it, is *222 liable for attorney's fees, damages, restitution of the price and repayment of the expenses of the sale. We are of the opinion that the record shows that Huffman was aware of the vices of the truck and failed to declare them. Ryan is therefore entitled to the following damages:

1. Payment for repairs done by Huffman $ 842.01
2. Natchez Equipment Company___________ 94.53
3. Monroe Mack - overhaul______________ 2,863.16
4. Wrecker service_____________________ 575.00
5. Attorney's fees ____________________ 3,000.00

Also, Ryan is entitled to recover the amount he paid on the note owed to Associates; $2,720.92. Likewise, he is entitled to compensation for Huffman's use of that part of the purchase money which was not borrowed. See Smith v. Max Thieme Chevrolet Co., Inc., supra. Ryan is therefore entitled to the return of his down payment of $4,500.00, plus 7% interest thereon from the date of the sale until the date of seizure, January 10, 1977, which we determine to be $295.68. We do not feel that Ryan is entitled to reimbursement for the $400.00 he expended on new tires to replace the original ones.
For the above and foregoing reasons, the judgment of the trial court is recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff-defendant-in-reconvention, Associates Financial Services Company, Inc. and against the defendant, William J. Ryan, dismissing Ryan's reconventional demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of third party defendant, Huffman Motor Company, Inc., and against William J. Ryan on its reconventional demand in the sum of $4,348.44, together with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the third party plaintiff, William J. Ryan, and against Huffman Motor Company, Inc., rescinding the sale from Huffman Motor Company, Inc. to William J. Ryan on February 9, 1976, of a used 1973 Mack truck, Serial # FA795LST, and that said truck be returned to Huffman.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Huffman pay and discharge the remaining obligation of William J. Ryan to Associates Financial Services Company, Inc., originally in the amount of $20,482.16, payable in twenty-nine monthly installments of $682.73 each, and a final installment of $682.99, contingent that upon payment of said sum, Associates Financial Services Company, Inc. deliver the subject truck to Huffman Motor Company, Inc.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of third party plaintiff, William J. Ryan, and against Huffman Motor Company, Inc. in the amount of $11,891.30 as damages and expenses occasioned by the sale, together with legal interest thereon from the date of the third party demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Huffman Motor Company, Inc. and against William J. Ryan in the amount of $2,500.00 as compensation for the use of the subject truck.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of William J. Ryan and against Huffman Motor Company, Inc. for $3,000.00 as attorney's fees, with judicial interest thereon from June 27, 1979.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the costs of these proceedings be borne equally by William J. Ryan and Huffman Motor Company, Inc.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] The Sheriff's Sale of the truck was with benefit of appraisement.
[2] This amount can be broken down as follows: $4,500.00 being the amount as down payment; $2,720.92, being the amount paid on the promissory note to Associates; $842.01, the amount paid to Huffman for repairs on the truck; $94.53, the amount paid to Natchez Equipment Co. for repairs on the truck; $2,863.16, the amount paid to Monroe Mack Sales for overhaul to the truck; $575.00, the amount paid to Plunk's Wrecking Service, West Monroe, La., for wrecker service to Florida and back; $400.00, the amount paid for tires on the truck; $3,000.00, attorney's fees.

These figures total $14,995.62; obviously a typographical error or an error in addition was made.
[3] "Art. 2531. The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.

In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any loses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."