CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division “C”, Parish of Jefferson, wherein the Honorable Joseph F. Grefer rendered judgment in favor of plaintiff, General Motors Acceptance Corporation (GMAC), and against *112 defendant, Patricia Sims, in the full amount of Five Thousand One Hundred Three Dollars and Thirty-Three Cents ($5,103.33) together with legal interest and attorney’s fees. Additionally, the claims of Patricia Sims against GMAC, in reconvention, and against third-party defendants, General Motors and Banner Chevrolet, Inc., were dismissed. We affirm.
We find the well articulated reasons for judgment to be both accurate and thorough and adopt, as our own, the following:
“On December 30, 1983, plaintiff, General Motors Acceptance Corp. (GMAC), filed a Petition for Executory Process against the defendant, Patricia Sims, as the holder of a promissory note drawn by Patricia Sims for the sum of $6,725.70. Said note was paraphed “Ne Varietur” for identification with an act of sale and chattel mortgage wherein Patricia Sims purchased from Banner Chevrolet, Inc. (Banner) a certain 1978 8-cylinder Chevrolet, two door Monte Carlo, the said note representing the unpaid balance on the purchase price. Subsequent thereto, plaintiff then filed a second amended petition converting the exec-utory proceeding to an ordinary proceeding as it discovered that it had misidentified the automobile in question.
“In response to this petition, Patricia Sims filed an answer, a reconventional demand against GMAC and third-party demands against Banner Chevrolet, Inc. and General Motors Corp. As plaintiff in re-convention to GMAC’s foreclosure action, Ms. Sims charged GMAC with liability for alleged redhibitory defects in the used car purchased (count I), as well as with liability for violations of the Louisiana Unfair Trade Practices and Consumer Protection Law (La.R.S. 51:1409, et seq) (count II); Federal Truth in Lending Act 15 U.S.C. 1601, et seq (count III); the Federal Motor Vehicle Information and Cost Savings Act and regulations of the United States Department of Transportation, National Highway Traffic Safety Administration (Odometer Privilege Statement) (count IV); plus the illegal seizure of the vehicle in question.
“As-third-party plaintiff, Ms. Sims made the same allegations against Banner and the General Motors Corp. (GM).
“The record reveals that on or about September 30, 1982, Patricia Sims purchased from Banner Chevrolet, Inc. a used 1978 Monte Carlo with approximately 44,-000 miles registered for the sum of $5,008.50. Sims contributed a $1,200.00 down payment and financed the remainder through GMAC through the aforementioned promissory note and chattel mortgage. Sims failed to pay any installments thereby maturing the entire unpaid principal balance. GMAC then instituted these proceedings to seize and sell the aforesaid vehicle and on February 7, 1983, petitioned that the car be sequestered in order to protect its rights to the automobile. On September 1, 1983, this Court entered a judgment authorizing the sale of the seized 1978 Monte Carlo for payment and satisfaction of the storage charges owed to the Civil Sheriff for the Parish of Orleans.
“The Court will first address the issue of Ms. Sims’ claims in redhibition.
“Ms. Sims testified that when she first went to Banner Chevrolet, Inc. she was looking to purchase a new car, however, she was unable to qualify for financing for a new vehicle. She then decided to purchase a used automobile. Ms. Sims stated that she was particularly interested in the black 1978 Monte Carlo that is the subject of this litigation. She stated that she did not closely inspect, nor did she test drive the car prior to purchase. Ms. Sims testified that the Banner salesman started the car and lifted the hood up for her to inspect the engine. Neither Sims nor her uncle, James Jones, who accompanied her to the premises, inspected the car or operated the vehicle. Sims looked inside the car, thought the tires looked good, but did not check any accessories.
“After purchase of the car, Ms. Sims did not drive the car off of the Banner premises, but rather had her uncle drive it as she was not familiar with the surrounding area. Ms. Sims first drove the car about one and one-half hours later, at which time *113 she said the car began jerking and had to be restarted. Sims testified that her uncle brought the car back to Banner a few days later. Ms. Sims stated that Banner kept the car for approximately three days in an attempt to repair the problem, which according to Ms. Sims was unsuccessful. Ms. Sims had the receipt for this service.
“The evidence indicates that the 1978 Monte Carlo was purchased under a thirty-day limited warranty as to the engine, transmission, rear axle, air conditioning, brake system and electrical system. In conjunction with the sale, Ms. Sims purchased for $521.00 a mechanical breakdown agreement which was an insurance policy covering the cost of repair of almost any mechanical problem in the vehicle for an extended period of time, including the cost of towing. (Exhibit Sims 6 & 7)
“The facts reveal that Banner stood behind both of these warranties and made repairs to the Sims’ car. On or about November 4, 1982, Sims brought the car in to Banner, which performed $829.72 worth of work on the car, (Exhibit Sims 11) referred to as an overhaul, at no cost to Sims as said expense was covered by the mechanical breakdown agreement policy. Although the ear was ready on November 9, 1982, Sims did not retrieve the car until November 20, 1982. The automobile sat idle for a period of about eleven days. Sims had trouble starting the vehicle and a new battery was installed, at no cost to Ms. Sims. Subsequent to November 20, 1982, the car was in the possession of Sims for five days without any complaints made to Banner. At trial, Sims testified that after the ‘overhaul’ the car still ran poorly and she felt that it had no power. She also stated that she had problems with the emergency brake and the blinkers; however, these complaints were not communicated to Banner.
“On November 25, 1982, while the car was in operation, the lower right ball joint suffered a break causing the A-frame to fall, thusly causing the car to stop. The car had to be towed from the site to Ms. Sims’ uncle’s house at a cost of $30.00. Sims contacted Banner on November 26, 1982, and insisted that Banner tow the car in although the mechanical breakdown agreement covers the cost of towing. At no time did Banner ever enter into a contract with Sims calling for Banner to tow her vehicle into its shop for repair. Sims was instructed by an employee of Banner to bring the car in for repairs. Sims testified that she refused to do so because she ‘thought’ she had a contract with Banner to tow the car. Sims testified at that point she wanted nothing further to do with the car and simply left the.car where it was as it was. Evidence was introduced at trial indicating that had Sims brought the car in for repairs, said repair of the ball joint in question would have been approximately $61.00 including labor.
“During the occurrences, and upon the advise of her former counsel, Sims intentionally neglected to make her first car payment which was due on November 14, 1982. Eventually, this caused the car to be seized and sold, thus preventing Banner from repairing the car, a right which Banner clearly had under the Louisiana law of sales. Sims testified that she was fully aware that if she did not pay the installments, the car would be seized, she nevertheless refused to make payment. Thereafter, at no time did Sims make physical tender of the car to Banner either for repair or rescission of the sale.”
Sims appeals asserting the following specifications of error:
that (1) the trial court erred in finding that no illegal seizure had occurred in the improper utilization of the executory process act; that
(2) the trial court erred in not finding that the cited consumer protection laws had not been violated by misidentification of the automobile in question; that
(3) the trial court erred by finding that a proper tender had not been accomplished by defendant-appellant; and that
(4) the trial court erred in finding that the totality of defects and/or the collapse of the automobile were not redhibitory de *114 fects sufficient to justify rescission of the sale.
The trial court was not in error in holding that appellant could not recover in redhibition against GMAC. Sellers and, by judicial interpretation, manufacturers are liable for redhibitory defects. LSA-C.C. arts. 2520 et seq. A loaning institution, which is neither the seller nor the manufacturer and which only finances the purchase of a product, which later is found to be defective, cannot be held liable for whatever redhibitory defects the product may have. Associates Financial Services Co. v. Ryan, 382 So.2d 215 (La.App. 3d Cir.1980). As the trial court properly noted in its reasons for judgment, “GMAC did nothing but finance the purchase of the automobile.”
GMAC’s original petition for executory process, filed December 30, 1982, misidentified the manufacturer’s serial number as 1 2 37U8R419687 instead of 1Z37U8R419687. On January 17, 1983, a first amended petition for executory process requested the original writ of seizure and sale be recalled and an alias writ of seizure and sale be issued under the same terms and conditions as originally prayed for. Pursuant to this first amended petition, appellant’s vehicle was seized on January 27, 1983.
Upon discovery of the typographical error, a second amended petition converting the prior executory proceeding to an ordinary proceeding was filed on February 7, 1983. On February 10, 1983, appellant’s vehicle was re-seized under a writ of sequestration as prayed for in the second amended petition.
GMAC exercised its contractual right to foreclose on the chattel mortgage and seized the vehicle when appellant defaulted on her debt. Appellant’s argument that her auto was seized illegally via exeeu-tivia is without merit.
Appellant’s contention that the cited consumer protection laws were violated because the vehicle was seized pursuant to the executory process is not supported by the facts. As we have already determined that the executory proceedings were abandoned and the vehicle was seized pursuant to ordinary process, we additionally dismiss this contention as meritless.
The trial court concluded appellant did not properly tender her auto to third-party defendant and accordingly dismissed her claims. Appellant contends such conclusion and dismissal to be error.
As to the question of tender, we find the following jurisprudence applicable, Vance v. Emerson, 420 So.2d 1032, 1035 (La.App. 5th Cir.1982):
“Before a suit for redhibition may be filed by any purchaser, he must first tender the return of the property and offer to restore things to the pre-sale status quo. This tender is a prerequisite to the maintenance of any action in redhi-bition. * * * in an action in redhibition, the purchaser is not entitled to rescission of the sale and recovery of the full purchase price unless he is in a position to return the purchased item. In such an instance, the purchaser is entitled only to a reduction in price and recovery of his expenses, if any.” (Citations omitted)
There is no question that appellant made no effort whatsoever to tender her auto to third-party defendant and that a tender was in fact never made. The question then is was appellant in a position to return the purchased item. The answer to that question is a resounding yes.
On November 25, 1982, appellant’s auto suffered a breakdown which initiated the instant litigation. This breakdown occurred while appellant was driving along South Claiborne. Appellant then had the auto towed to her uncle’s house located at 8601 Willow Street. At this time, appellant phoned Banner, informed them of the breakdown and requested that they come retrieve the car. Banner informed appellant that they neither provided nor arranged towing, but that if she would arrange to have her auto brought in, the cost of towing, as well as the necessary ball-joint repairs, would be covered by her mechanical repair agreement.
*115 Appellant refused to arrange to have her vehicle towed to Banner for repairs stating, “I did not want to have anything to do with the car_ No I refused.” When asked if she was satisfied to have the car seized, appellant, aware that if she did not pay the note the car would be seized, responded, “I wanted another car.”
It is clear that although appellant was in a position to have her auto returned for repairs, she deliberately chose not to do so and intentionally did not pay her GMAC installment and allowed her car to sit idle until seized. The trial court’s finding that a proper tender had not been accomplished was not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
As third-party defendant was never afforded an opportunity to repair the defect complained of, we find appellant’s last assignment of error moot.
Accordingly, for the above stated reasons, the judgment appealed is affirmed at appellant’s cost.
AFFIRMED.